AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| PRISTEC REFINING TECHNOLOGIES USA, LLC, EARLE REFINING LLC, EARLE OIL INVESTMENTS, LLC, and EARLE INVESTMENTS, LLC,<br><br>        Claimants/Counter-Respondents,<br><br>v.<br><br>PRISTEC AMERICA, INC., (NEVADA), PRISTEC AMERICA, INC. (NEW JERSEY), INNOVATIVE CRUDE TECHNOLOGIES, INC., ANTHONY SICHENZIO, AND JOSEPH LAURA,<br><br>        Respondents/Counterclaimants.<br><br>v.<br><br>WALTER GIL de RUBIO,<br><br>        Third Party Respondent. | Case No. 01-22-0000-7497 |

**ARBITRATOR'S RULINGS ON CLAIMANTS'
MOTIONS TO AMEND ARBITRATION DEMAND
AND FOR ADDITIONAL DISCOVERY; AND THIRD
PARTY RESPONDENT'S MOTION TO EXTEND
DISCOVERY AND COMPEL RESPONSES TO
DISCOVERY DEMANDS**

This is a motion by Claimants Earle Refining LLC, Earle Oil Investments, LLC, and Earle Investments, LLC (collectively "Claimants" or "Earle") for leave to amend their Arbitration Demand and to compel additional discovery from Respondents Joseph Laura, Anthony Sichenzio, Pristec America, Inc. (NEVADA), Pristec America, Inc. (NEW JERSEY), and Innovative Crude Technology (collectively "Respondents" or "Pristec America"). Additionally, Third-Party Defendant Walter Gil de Rubio moves to compel discovery on his note action against Joseph Laura, individually.

## BACKGROUND

Briefly, by way of background, this case arises from two failed joint ventures to commercialize in the United States a "revolutionary" oil refining technology developed by a non-party Austrian company Pristec A.G. This technology ("Pristec Technology"), which uses pressure and frequency waves to break down the molecules of heavy crude oil resulting in more easily refinable and therefore more marketable light crude, was licensed to Respondent Pristec America, Inc., who in turn sublicensed the technology to Claimants, in particular Pristec Refining Technologies USA, LLC ("PRT").

Claimants' original claims, encompassed in an October 24, 2017 lawsuit filed in the Chancery Division of Superior Court, Monmouth County, involved alleged breaches by Respondents of various agreements between the parties establishing the two joint ventures – Pristec Northeast LLC ("PNE") and Pristec Refining Technologies USA, LLC ("PRT") – and obligating Respondents to provide these new entities with the promised technology and technical support. Subsequently, Claimants withdrew some of their claims in the 2017 action and – following a final award issued in an ICDR arbitration between Laura, Sichenzio and Pristec AG, and subsequent to that, Earle's supposed purchase of the patent from Pristec AG – filed a second action on July 31, 2019, asserting claims against Respondents of breach of contract, fraudulent inducement, conversion and seeking a declaration that the sale and transfer of the patent by Pristec AG to Earle ("635 Patent") was valid and enforceable.

Respondents filed counterclaims against Claimants and third-party claims against de Rubio essentially alleging that Claimants conspired in bad faith to divest

Laura and Sichenzio of their interests in the joint ventures and to fraudulently appropriate the Pristec Technology for their own exclusive benefit. Among other relief sought, Respondents requested a declaratory ruling that the purported July 3, 2019 Patent Purchase Agreement between Pristec AG and Earle is invalid and unenforceable.

These two Superior Court actions were eventually consolidated. The original Case Management Order set a deadline for document discovery on January 30, 2020, and an Amended Case Management Order of July 2, 2020 extended discovery to November 5, 2020. On October 26, 2020, Claimants moved to compel the production of requested documents and that motion was pending when the parties executed an Arbitration Agreement on June 30, 2021, following denial of their dueling summary judgment motions in the Superior Court actions, which were then poised for trial. Basically, the Arbitration Agreement waived proceeding in court; required arbitration before the American Arbitration Association (AAA) of the dispute between the parties in the First and Second Superior Court actions; barred new claims from being brought; and strictly limited any further discovery.

Specifically, Paragraph 8 of the Arbitration Agreement recites that "[t]he Parties agree to be bound by their pleading as they are presently situated and that no further amendments shall be permitted . . . ." Furthermore, Paragraph 7 of the Agreement allows the use of all discovery thus far produced in the Superior Court actions but expressly provides that "all fact discovery has been concluded" and that the only remaining discovery "is the deposition(s) of expert(s), to the extent any party wishes to depose the other party's expert," which "shall take place within thirty (30)

4

days of the effective date of this agreement." Paragraph 9 of the Agreement incorporates into the Arbitration "all prior court orders, pleadings, filings, discovery documents, and other materials submitted or exchanged" in the Superior Court actions.

A Consent Order was entered on August 6, 2021, acknowledging the parties "have reached an agreement to arbitrate the disputes between them that are in issue in the First and Second Action [s] in accordance with the Agreement to Arbitrate . . .." The Consent Order also dismissed the two Superior Court actions without prejudice, the court having retained "jurisdiction over all matters arising from or related to the First and the Second Action, including but not limited to, the parties' Agreement to Arbitrate . . .."

Subsequently, the parties executed an Amendment to the Arbitration Agreement on September 23, 2021, in response to a new action filed by de Rubio against Laura (the "Note Action"), claiming Laura owes de Rubio $2.6 million on a "promissory note". The Amendment submitted the Note Action to arbitration, dismissed claims against Laura in the "Glenwood Action," and permitted limited discovery on an expedited basis. Specifically Paragraph 6 provides:

> Discovery. If Laura or Gil de Rubio elect to conduct discovery with respect to the Note Action, that discovery shall be on an expedited basis to be completed within forty-five days of the signing of this Agreement by all parties, or such reasonable limited extension as the Arbitrator deems appropriate. Depositions shall be limited to those of Laura and Gil de Rubio or witnesses identified in discovery and shall be limited to questions regarding the authenticity, terms, execution, and/or satisfaction of said alleged promissory note together with discovery on any defenses to payment of the Note. Depositions shall be taken remotely and shall not exceed four (4) hours each, unless otherwise extended by the Arbitrator or upon mutual agreement of counsel for Laura and Gil de Rubio. Interrogatory requests, a single notice to admit, and a request for the production of records, each may be served within ten (10) days of the signing of this Amendment by all parties.

5

> Interrogatories shall not exceed twenty (20) questions including discreet subparts. Any Notices to Admit shall not exceed forty (40) questions. Any Notices to Produce shall be limited to twenty (20) requests including discreet subparts.

Accordingly, Claimants initiated the present proceeding by filing an Arbitration Demand on February 18, 2022, reasserting claims in their 2019 Complaint;[1] seeking dismissal of Respondents' counterclaims; and requesting a declaration that the purported July 3, 2019 sale and transfer of the '635 patent by Pristec AG to Earle is valid and enforceable under the laws of Austria and the United States.

By filing the instant motion, Claimants are now seeking to amend their Arbitration Demand by asserting additional claims against Laura for fraud, conspiracy and misappropriation of trade secrets based on so-called newly discovered evidence and to obtain additional discovery from Respondents on these new claims. Essentially, Claimants now allege Laura conspired with other Respondents and non-parties to misappropriate the Technology created at Pristec AG and using it in filing an infringing patent application (the NVT '402 Application), claiming to have invented the Technology themselves and then assigning it to an entity (New Vacuum

---

[1] 1). Breach of the Refinery Joint Venture License and Operating Agreement against Pristec America (Complaint, Count I);
2). Breach of contract for failure to return the $150,000 deposit in connection with the Terminal Joint Venture against Pristec America (Id., Count III);
3). Breach of the implied covenant of good faith and fair dealing against Pristec America (Id., Count IV);
4). Conversion;/theft against Laura (Id., Count V);
5). Fraud, fraudulent inducement, and aiding and abetting fraud against all Respondents (Id., Count VI); and
6). Breach of fiduciary duty and aiding and abetting breach of fiduciary duty against all Respondents (Id., Count VII).

6

Technologies, LLC – "NVT") they formed during the pendency of this action so as to "cut Claimants out of the picture" and to exploit the Technology for their own financial gain.

Respondents oppose Claimants' motion to amend the Arbitration Demand to assert these new claims of Respondents' alleged wrongdoing and to compel discovery thereon, primarily on jurisdictional grounds, arguing that the Arbitration Agreement expressly prohibits the assertion of new claims and, a fortiori, discovery thereon. Not only are such claims outside the scope of the Arbitration Agreement, they sound in patent infringement which, Respondents argue, is within the exclusive jurisdiction of the federal courts. Moreover, Respondents dispute the new claims are based on newly discovered evidence, positing that Claimants knew of NVT's existence as early as June 2020, long before the Arbitration Agreement was signed, and actually expressed their intention to sue back in October 2021, seven months before they now claim to have learned of NVT's operations.

Even if they are denied new claims and discovery thereon, Claimants seek to compel depositions of experts and responses to their supplemental document requests generally concerning Respondents' financial condition and use of investor funds. Again, Respondents object, citing the plain language of the parties' Arbitration Agreement, stating that all fact discovery has been completed and the only remaining discovery involves the depositions of experts, which deadline has long since expired.

Finally, Claimant de Rubio moves to compel Respondent Laura to provide responsive discovery answers to his demands in the Note Action, and to be deposed. Although such discovery was to be completed within 45 days of its execution, the

7

Amendment to the Arbitration Agreement allows for such limited extension as the Arbitrator "deems appropriate." Laura objects to de Rubio's motion, arguing that he has produced all non-privileged and relevant documents in his possession, as well as answers to de Rubio's interrogatories, having objected to several demands seeking confidential and privileged information or overbroad discovery beyond the scope set forth in the Amended Arbitration Agreement, strictly limited to the 2009 Promissory Note. Moreover, de Rubio never requested Laura's deposition within the limited time allowed in the Agreement.

## RULINGS

### I

Governed solely by the plain and unambiguous language of their Arbitration Agreement, the parties are expressly barred from expanding their claims beyond that stated in their Arbitration Demand. Accordingly, Claimants' Motion to Amend to add new claims is **DENIED**

As noted, the Arbitration Agreement specifically provides that "[t]he parties agree to be bound by their pleading as they are presently situated and that no further amendments shall be permitted . . .." This Agreement is jurisdictional in the sense that it defines the scope of the arbitral controversy beyond which the Arbitrator lacks authority to act. Communication Workers of Am., Local 1087 v. Monmouth County Bd. Of Social Services, 96 N.J. 442, 450 (1984); Gelber v. Zito Partnership, 147 N.J. 561, 565 (1997).

Not only does Claimants' proposed amendment assert an entirely new class of claims, these claims sound in patent infringement, which is within the exclusive domain of the federal courts, and implicate the patent rights of non-parties (ie. NVT) to this case. Actually, the only patent-related issue the Arbitrator is empowered to decide given the parties' Arbitration Agreement is the validity and enforceability of the Patent Assignment between Earle and Pristec AG, which was executed only a few days after the ICDR arbitrator issued a permanent injunction enjoining Pristec AG from terminating the Pristec Nevada License Agreement "without due process of law." Indeed, Claimants' proposed patent-infringement claim is wholly dependent on a determination that Earle legally owns Pristec AG's patents and was validly assigned

9

its license rights in the United States, which, as noted, is the only patent- related issue the Arbitrator is authorized to adjudicate under the parties' Arbitration Agreement. Consequently, a determination in Respondents' favor would render moot the claims related to the so-called "NVT Scheme" that Claimants now seek to interject into this proceeding, allaying any concerns over fragmented or piecemeal litigation while promoting notions of efficiency, avoidance of waste and reduction of delay. On the other hand, should Claimants prevail on the threshold issue, the Superior Court has retained jurisdiction "over all matters arising from or related to the First and Second Actions . . .," thereby preserving Claimants' newly-founded claims based on events quite separate and distinct from, and occurring subsequent in time to, those forming the basis for the only causes of action the parties have contracted to arbitrate.

Having been denied leave to amend their Arbitration Demand to assert additional claims against Respondents relating to the so-called "NVT Scheme," Claimants' motion to compel additional discovery thereon will, of necessity, also be **DENIED** as it pertains to matters outside the scope of the arbitral controversy.

Regarding Claimants' request to compel responses to their supplemental document requests relative to their existing fraud and conversion claims against Respondents, that motion is **DENIED** as well, inasmuch as the parties' Arbitration Agreement explicitly acknowledges that "all fact discovery has been concluded . . . ." While Claimants had filed a motion to compel such discovery in the Superior Court action on October 26, 2020, both parties, well aware of the pendency of that unresolved motion, nevertheless executed an Arbitration Agreement eight months later, specifically agreeing that no additional fact discovery would take place. In fact,

10

all that remained according to the Arbitration Agreement was "the deposition (s) of the expert(s)," which was to occur "within thirty days of the effective date [June 30, 2021] of its execution."

On this score, both parties each produced two expert reports – one on damages and one on Austrian law in connection with the validity of the sale of the '635 Patent to Earle. The Arbitration Agreement fixed the deadline for expert depositions at July 30, 2021. According to Claimants, their counsel requested dates for the depositions of Respondents' experts by email on July 12 and 20, 2021, but no specific dates were provided. The initial Arbitrator in this matter resigned only three months later so no motion to compel expert depositions could realistically have been made until now with the recent appointment of the successor Arbitrator. Under these circumstances and particularly given the importance of the issues addressed in the experts' reports to resolution of the matters at hand, Claimants' motion to compel expert depositions is **<u>GRANTED</u>**. Upon request, each party shall produce their expert(s) within 45 days of the date of this opinion or be precluded from relying on their expert reports or calling their experts to testify at the evidentiary hearing in this matter. As required by the Arbitration Agreement, "any expert depositions shall be performed virtually" unless of course agreed otherwise by the parties, with the opposing party paying in advance the expert's "usual and customary fees to appear and be deposed."

## II

As noted, the June 30, 2021 Arbitration Agreement was amended less than three months later solely to address an interim lawsuit filed in the Law Division by third-party Respondent Walter de Rubio against Respondent Laura, alleging the latter owes him $2.6 million on a promissory note purported to have been executed on January 16, 2009 (the "Note Action"). The Amendment submitted the Note Action to binding arbitration and provided for limited discovery "on an expedited basis," to be completed within 45 days of the Amendment's execution, "or such limited extension as the Arbitrator deems appropriate."

Pursuant thereto, and within the timeframe set forth in the Amended Arbitration Agreement, de Rubio served upon Laura interrogatories and notices to produce documents and to admit. Laura responded to de Rubio's discovery demands, certifying that he produced responsive answers and all non-privileged and relevant documents in his possession, but objecting to those requests for confidential information and for information beyond that directly related to the promissory note. On October 28, 2021, well within the discovery window, and less than two weeks after the initial Arbitrator resigned, counsel for de Rubio objected to Laura's production as deficient and unresponsive to his discovery demands. However, no request was made for Laura's deposition or anyone else's within the time prescribed under the Amendment.

Because the initial Arbitrator resigned before any resolution of the evolving discovery dispute, de Rubio now moves before the recently appointed successor Arbitrator to compel responsive written discovery as well as Laura's deposition.

Specifically, de Rubio seeks answers to interrogatories ## 2, 4, 5, 7, 8 and 11; documents pursuant to his notice to produce ## 1, 2, 3, 7, 8, 10, 11, 12, 15 and 16; and admissions pursuant to requests ## 2, 6, 7-15 and 17-20. Laura replies that he has "fully responded to the written discovery . . . which concerned the 2009 promissory note," and furthermore, de Rubio has "waived" the taking of Laura's deposition by now making a timely demand for same.

The time allotted for discovery under the Amendment has long since expired, although it may be extended in the reasonable exercise of the Arbitrator's discretion. Here, the totality of the circumstances simply does not warrant extending the time for written discovery. Accordingly, de Rubio's motion to compel Laura to respond to his written discovery demands, which, if permitted, would effectively extend the window for discovery, is **DENIED**.

In the first place, the Amended Arbitration Agreement placed strict limitations on the permitted discovery both in terms of time ("on an expedited basis"); scope (limited to questions regarding "authenticity, terms, execution and/or satisfaction"); and volume (interrogatories not to exceed 20 questions; notice to produce not to exceed 20 requests; notice to admit not to exceed 40 questions). These constraints evidence a clear intent that the matter proceed to an evidentiary hearing expeditiously, without the undue delay occasioned by resolving burdensome and time-consuming discovery disputes. And although the Amendment allowed for some relaxation, any accommodation is entirely within the discretion of the Arbitrator, and then only, to allow for a reasonably limited extension.

Second, and just as significant, discovery has already been exchanged in this matter, with Laura having certified that he produced all non-privileged and relevant documents in his possession and having provided sworn answers to interrogatories along with a certificate of completeness. Facially at least, Laura's objections to several of de Rubio's discovery requests appear reasonably grounded in legitimate claims of privilege and over breadth, particularly with respect to those demands related to the "Glenwood Action" that had been dismissed with prejudice, as well as those seeking confidential information pertaining to Laura's legal representation of de Rubio's family members. Of course, should these objections ultimately prove meritless, Laura will bear the consequences of non-production at the evidentiary hearing stage. And on this score, it is not without significance that on December 28, 2021, well after the parties executed the Amended Arbitration Agreement, Claimants in the First and Second Actions, wherein de Rubio was a party himself, represented to the Court that the matters were "trial ready." For these reasons, then, de Rubio's motion to extend discovery is **DENIED**.

A different result obtains with de Rubio's request to depose Laura. Obviously, the central issue in the Note Action is the authenticity of the purported debt instrument, and if genuine, its satisfaction or default. Consequently, credibility will be key to the final disposition. It would appear, then, that depositions, confined to the principals only – Laura and de Rubio – and further limited by the Amendment's temporal and content constraints, would serve the truth finding process and thus further the interests of justice. Although as Laura notes, no deposition notice was served within the time limits fixed in the Amendment, the unusual circumstances of

the initial Arbitrator's sudden resignation only weeks after the Amendment was executed, coupled with the vacuum created by the resulting interregnum, warrants some relaxation of the Amendment's limited discovery window.  Accordingly, de Rubio's motion to allow for <u>party</u> depositions is **GRANTED**, subject, however to the condition they occur within 60 days of the date of this opinion; each endure for only four hours; and questioning limited to the authenticity, terms, execution and satisfaction/default of the purported promissory note.

                        Submitted by:

                        *Anthony J. Parrillo*
                        Anthony J. Parrillo
                        Arbitrator
                        August 15, 2022