# EXHIBIT 1

## PATENT PURCHASE AGREEMENT

This PATENT PURCHASE AGREEMENT ("**Agreement**") is entered into on July _3_, 2019 ("**Effective Date**") by and between Earle Refining LLC, a New Jersey limited liability company with its principal place of business at 1800 Route 34, Wall, New Jersey 07719 ("**Earle**" or "**Buyer**") and Pristec AG, a joint stock company organized under the laws of the Republic of Austria, having a principal place of business in Vienna, Austria ("**PAG**" or "**Seller**"). Earle and PAG may be referred to herein individually as a "Party" and collectively as the "Parties."

WHEREAS, Seller owns Austrian Patent Nos. AT509680 B1 2012-04-15 granted April 15, 2012 and AT510227 B1 2013-01-15 granted January 15, 2013 ("**Austrian Patents**"), as well as United States patent applications and issued patents that claim priority to the Austrian Patents, including US Patent No. 10,053,635 and U.S. Patent Application Nos. 16/017,651 and 16/017,725 ("**United States Patents**").

WHEREAS, Seller wishes to sell to Buyer its entire right, title and interest in the United States Patents, the causes of action to sue for infringement thereof, and any other legal rights entitled by the original owner of the United States Patents under the law; and

WHEREAS, Buyer wishes to purchase the United States Patents.

NOW, THEREFORE, for good and valuable consideration, the receipt, sufficiency, and adequacy of which are hereby acknowledged, the Parties agree as set forth herein.

## 1.  TRANSFER OF PATENTS

1.1   Patent Assignment.  Seller hereby assigns, transfers and conveys to Buyer all right, title and interest it has in and to the United States Patents, including without limitation, any and all legal rights of Seller to sue for past, present and future infringement, to collect royalties under such United States Patents, to prosecute all existing United States Patents, to apply for additional patent grants claiming priority to the United States Patents worldwide and to have additional patent grants claiming priority to the United States Patents issue in the name of the Buyer.

1.2   Assignment of Causes of Action.  Seller hereby assigns, transfers and conveys to Buyer all right, title and interest it has in and to all causes of action and enforcement rights it has, whether known, unknown, currently pending, filed, or otherwise, for the United States Patents, including without limitation all its rights to pursue damages, injunctive relief and other remedies for past, current and future infringement of the United States Patents.

1.3   Assignment of License Agreement. Seller hereby assigns, transfers and conveys to Buyer all right, title and interest it has in, and Buyer hereby assumes all rights and obligations of Seller under, that certain Patent, Technology and Know-How Licenses Agreement dated as of October 1, 2013, as amended, by and between Seller and Pristec America, Inc., a Nevada corporation (the "PAI License") for only that portion of the Primary Territory (as defined in the PAI License) which is the United States of America. For purposes of clarification, Seller retains the rights and obligations under the PAI License for all other areas covered under the Primary Territory. The

6063634 v6

Seller shall provide the Buyer with all support necessary, including providing the Buyer with know-how, for the Buyer to fulfill its obligations under the License Agreement referenced herein.

1.4    <u>Sellers Knowledge</u>.   The Seller shall provide the Buyer with all support necessary, including providing the Buyer with know-how, for the Buyer to make use of the technology covered by the United States Patents.

## 2.    CONSIDERATION TO SELLER

2.1    <u>Payment.</u>   In consideration for the assignment of such rights, title and interest in the United States Patents and the other obligations of Seller as set forth in this Agreement, Buyer shall pay Seller the total sum of Five Hundred Thousand (US$500,000). Buyer shall make such payment in immediately available funds by wire transfer as follows: Three Hundred Thousand (US$300,000) immediately upon receipt of both this Agreement and Assignment of the United States Patents signed by Seller and Two Hundred Thousand Dollars (US$200,000) within two (2) business days of the date that Seller provides to Buyer all of Seller's records and documents (in whatever medium those records are kept) related to the United States Patents and the know-how necessary to make use of the technology covered by the United States Patents.

2.2    <u>Cooperation After Effective Date.</u>   Seller further covenants and agrees that it will upon request, execute and deliver to Buyer any other reasonably requested documents and materials that Buyer reasonably believes are necessary for Buyer to perfect its title in the United States Patents.

2.3    <u>Execution of Assignment Agreement</u>.   Seller and Buyer shall execute contemporaneously herewith the Assignment attached hereto as **Exhibit A** suitable for filing with the United States Patent and Trademark Office.  Buyer shall also promptly send all files and original documents owned or controlled by Seller or its agents or attorneys regarding the United States Patents including, without limitation, any assignments for the United States Patents, documents and materials evidencing dates of invention, prosecution history files, and an electronic copy of an updated Docket current as of the Effective Date.

## 3.    RESERVED

## 4.    REPRESENTATIONS AND WARRANTIES

4.1    Seller hereby represents and warrants to Buyer that:

4.1.1    <u>Authority.</u> Seller has obtained all necessary approvals from its governing bodies and has the right and authority to enter into this Agreement and to carry out its obligations hereunder and requires no third party consent, approval, and/or other authorization to enter into this Agreement and to carry out its obligations hereunder, including, without limitation, the assignment of the United States Patents to Buyer.

4.1.2    <u>Title and Contest</u>.   Seller has good and marketable title to the United States Patents, including without limitation all rights, title, and interest in the United States Patents and the right to sue for past, present and future infringement thereof. Seller has obtained and properly recorded

6063634 v6



**CONFIDENTIAL**

previously executed assignments for the United States Patents as necessary to fully perfect Seller's rights and title therein in accordance with governing law and regulations in each respective jurisdiction. The United States Patents are free and clear of all liens, mortgages, security interests or other encumbrances and restrictions on transfer. There are no actions, suits, investigations, communications, correspondence, claims or proceedings threatened, pending or in progress relating in any way to the United States Patents. Without limiting the foregoing, there are no outstanding payments or other consideration due or owing with respect to the United States Patents.

4.1.3   Fees. All maintenance fees, annuities, and the like due on the United States Patents have been timely paid.

4.1.4   Validity and Enforceability. The United States Patents have never been found invalid or unenforceable for any reason in any administrative, arbitration, judicial or other proceeding.

4.2   Buyer hereby represents and warrants to Seller that:

4.2.1   Buyer has the right and authority to enter into this Agreement and to carry out its obligations hereunder, including, without limitation, making the Payment under Section 2.1.

5.   **CONFIDENTIALITY**

5.1   Restrictions on Disclosure. The terms and conditions of this Agreement, but not the existence of this Agreement, are confidential and may not be disclosed to anyone other than the Parties without the prior written consent of both Parties; provided, however, that the terms and conditions of this Agreement may be disclosed to the extent such disclosure (a) is necessary to enforce or interpret this Agreement, (b) is necessary for the rendering of professional services by attorneys, accountants, or financial advisors, provided that such attorneys, accountants, or financial advisors agree to maintain the confidentiality of any information acquired pursuant to any such disclosure, (c) is necessary to complete any tax return or tax reporting requirement, (d) is necessary to respond to or comply with a subpoena, provided that each non-subpoenaed Party is given reasonable notice of the subpoena and the opportunity to resist disclosure or to impose confidentiality thereon; (e) is made under a protective order entered by a court in a judicial proceeding limiting disclosure to the litigating parties' outside counsel; or (f) is necessary to comply with a court order or to otherwise comply with applicable law (disclosure pursuant to this section (f) is not currently anticipated by either Party); or (g) is necessary for Buyer to manufacture, develop and otherwise use the technology covered by the United States Patents.

5.2   Exceptions. Notwithstanding the provisions of Section 5.1 of this Agreement, the Assignment once executed may be publicly disclosed, and the Parties intend that once executed the Assignment, attached hereto as Exhibit A, along with its Schedule 1, will be publicly recorded with the United States Patent and Trademark Office.

5.3   No Press Releases. The Parties agree that no Party shall issue any press releases regarding this Agreement.

6063634 v6

## 6.   CHOICE OF LAW/VENUE

6.1     This Agreement shall be construed, applied, and enforced in accordance with the laws of the State of New Jersey, except for its conflicts of laws provisions.   All Parties submit to personal jurisdiction in the State of New Jersey for any action to enforce any obligation of any Party under this Agreement. The State and federal courts of the State of New Jersey shall have co-exclusive jurisdiction over all disputes hereunder.

## 7.   SEVERABILITY

7.1     If any provision of this Agreement, or the application of such provision to any person or circumstance, is held by a court of competent jurisdiction to be invalid, then the remainder of this Agreement, or the application of such provision to other persons or circumstances, shall not be affected thereby.  In any such event, the Parties shall negotiate in good faith a valid and enforceable substitute provision for any invalid, void, or unenforceable provision that most nearly achieves the intent of such provision.

## 8.   ENTIRE AGREEMENT

8.1     This Agreement, together with **Exhibit A** attached hereto, constitutes the entire, complete, and final agreement and understanding of the Parties with respect to the subject matter hereof, and supersedes all previous negotiations, agreements, understandings, and commitments between the Parties regarding the subject matter of this Agreement.  This Agreement, and the Parties' rights and obligations hereunder, shall not be released, discharged, changed, waived, or modified, except by instruments in writing signed by duly authorized officers or representatives of all Parties.

## 9.   COUNTERPARTS

9.1     This Agreement may be executed in one or more counterparts, including facsimile or email counterparts, and all so executed shall constitute one agreement, binding on the Parties, even though all Parties are not signatories to the original or the same counterpart.  Any counterpart of this Agreement that has attached to it separate signature pages, which altogether contain the signatures of all Parties hereto, shall for all purposes be deemed a fully executed instrument.  The Parties agree to exchange facsimile or emailed .pdf copies of the signed Agreement and to thereafter exchange signed originals of this Agreement for their respective records.

## 10.   SUCCESSORS AND ASSIGNS

10.1     This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, successors and permitted assigns.

## 11.   INTERPRETATION

11.1     Each Party acknowledges that it and its legal counsel have reviewed and participated in settling the terms of this Agreement, and the Parties hereby agree that any rule of construction to

6063634 v6



the effect that any ambiguity is to be resolved against the drafting Party shall not be applicable in the interpretation of this Agreement.

## 12. NO CHALLENGE

12.1    To the extent legally enforceable, Seller hereby agrees, so long as this Agreement is in effect, not to file any action, assert any affirmative defense, or institute any proceeding in any court or governmental agency that challenges the validity, enforceability, or patentability of any United States Patents.

## 13. RIGHT OF FIRST OFFER

13.1    Buyer shall first offer to sell the United States Patents to Seller before offering the United States Patents for sale to any other party. Buyer shall deliver notice of such offer in writing and such offer shall include the price and all other material terms. Seller shall have ten (10) days to accept the offer in writing (with Seller's failure to respond in writing being deemed a rejection of the offer). If Seller does not accept the offer Buyer shall be free to sell the United States Patents to any other party on terms and conditions no more favorable than those offered to Seller. The provisions contained in this Section 13 shall expire twelve (12) months after the date of this Agreement, at which time Seller shall have no further right of first offer.

[signature page follows]

6063634 v6



Earle Refining LLC

_____
Signature

Thomas J. Earle
_____
Printed Name

Manager
_____
Title

7·3 -19
_____
Date

Pristec AG

_____
Signature

RUEDIGER NUERK
_____
Printed Name

Chairman & CEO
_____
Title

July 3rd, 2019
_____
Date

6063634 v6

# EXHIBIT A

### FORM OF PATENT ASSIGNMENT

**See attached**

6063634 v6

   CONFIDENTIAL

## UNITED STATES PATENT ASSIGNMENT

This PATENT ASSIGNMENT (this "Assignment") is made by and between Pristec AG, a joint stock company organized under the laws of the Republic of Austria ("Assignor"), and Earle Refining LLC, a New Jersey limited liability company ("Assignee"), and is being entered into pursuant and subject to the PATENT PURCHASE AGREEMENT executed and effective as of July _5d_ 2019 (the "Agreement").

WHEREAS, Assignor has acquired ownership of all of the right, title, and interest in and to U.S. Patent No. 10,053,635 and U.S. Patent Application Nos. 16/017,651 and 16/017,725, together with reissuances, continuations, continuations-in-part, revisions, extensions and reexaminations thereof (collectively, "**United States Patents**; and

WHEREAS, it has been and is the intention of Assignor and Assignee, that Assignee own all of Assignor's right, title and interest in and to all of Assignor's United States Patents, including all rights to claim, sue, and collect for all alleged infringement, including for any and all past damages, and be applicant for all United States Patents, wherever so permitted by law;

NOW, THEREFORE, for good and valuable consideration, the receipt, sufficiency, and adequacy of which are hereby acknowledged:

1.      Assignor hereby sells, assigns, conveys, transfers, and sets over to Assignee and Assignee's successors and assigns, and Assignee acknowledges and receives from Assignor, all of Assignor's rights, title, and interest, and all of the rights, title, and interest of any of Assignor's affiliates, in and to the United States Patents on and as of the Effective Date, including United States patent applications, utility models and design registrations, and all rights to claim priority thereto, including priority under the Paris Convention, the Patent Cooperation Treaty and any and all applicable treaties and conventions of like purpose, and including all United States provisional, non-provisional, continuation, divisional, reissue, national phase and extension applications and patents thereof in the United States, along with any and all rights of renewal, maintenance, abandonment, disposition and enforcement with respect thereto, and the right to sue and/or recover for past, present, and future infringement thereof in the United States, and any and all causes of action related thereto. Assignee, its successors and assigns, or any entity it may properly designate, may apply for and receive patents therefor in its own name in the United States.. Assignor represents and warrants to Assignee, and to Assignee's successors and assigns, that Assignor has not and will not execute any writing or do any act that conflicts with this Assignment.

2.      Assignor does not retain, whether expressly, by implication, estoppel or otherwise, any right, title, or interest in and to the United States Patents. For the avoidance of doubt, as of the Effective Date, Assignee shall solely and exclusively have the right and be entitled, in its sole discretion, in and/or under the laws of any country and jurisdiction, to initiate and/or continue any action, suit, litigation, arbitration or other proceeding of any kind, and seek, enforce, and benefit from any right, remedy and/or award, for any infringement or violation of the United States Patents. Assignee does not and shall not have any obligation to account for,

6082374 v2

report, or share any such remedy or award to Assignee with Assignor, or make any other payment for the United States Patents.

     3.    Upon Assignee's request, Assignor shall provide any assistance, including, without limitation, providing any information and documents, executing any documents and affidavits, providing any testimony, and/or rendering any other assistance, as is reasonably requested for Assignee to secure, perfect, and record sole and exclusive ownership of, and obtain registrations in the name of Assignee or a third party designated by Assignee, for the United States Patents and/or any part thereof, and to otherwise fully effect and implement the provisions in this Assignment. Assignor represents and warrants to Assignee that Assignor will promptly record transfers of all of the United States Patents to Assignor, and Assignor will promptly deliver to Assignee copies of all such recordings.

     4.    Should any section, or portion thereof, of this Assignment be held invalid by reason of any law existing now or in the future in any jurisdiction by any court of competent authority or by a legally enforceable directive of any governmental body, such section or portion thereof shall be validly reformed so as to approximate the intent of Assignor and Assignee as set forth herein as nearly as possible and, if unreformable, shall be deemed divisible and deleted with respect to such jurisdiction; this Assignment shall not otherwise be affected. This Assignment shall be binding upon Assignor and all of Assignor's successors and assigns, and shall be binding upon and inure to the benefit of Assignee and its successors and assigns.

     5.    Assignor authorizes the United States Patent and Trademark Office to issue any and all patents resulting from the United States Patents, to Assignee according to this Assignment. The right, title and interest is to be held and enjoyed by Assignee and Assignee's successors and assigns as fully and exclusively as it would have been held and enjoyed by Assignor had this assignment not been made.

     6.    This Assignment, but not the Agreement or any part thereof, may be publicly disclosed, and will be publicly recorded in various countries.

6082374 v2



**CONFIDENTIAL**

Assignor, and Assignee, have executed this Assignment, each through its authorized representative, to be effective as of the Effective Date.

**Assignor:**

Pristec AG

Name: _RUEDIGER NUERK_

Title: _CHAIRMAN & CEO_

Date: _July 3rd. 2019_

**Assignee:**

Earle Refining LLC

Name: _Thomas J. Earlo_

Title: _Manager_

Date: _7-3-19_

6082374 v2

CONFIDENTIAL