**PECKAR & ABRAMSON, P.C.**
70 Grand Avenue
River Edge, NJ 07661
Telephone: (201) 343-3434
Kevin J. O'Connor, Esq. KOConnor@pecklaw.com
Kevin M. Foltmer KFoltmer@pecklaw.com
Attorneys for Defendants

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| EARLE REFINING, LLC, <br><br>                Plaintiff, <br> vs. <br><br> NEW VACUUM TECHNOLOGIES LLC <br> and NORTH JERSEY PETROLEUM <br> OPERATIONS, LLC, <br><br>                Defendants, | Case No. 3:22-cv-04469-GC <br><br> ECF CASE – Electronically Filed |

## BRIEF IN SUPPORT OF MOTION TO STAY THE ACTION PENDING
## COMPLETION OF ARBITRATION OR IN THE ALTERNATIVE TO
## DISMISS FOR FAILURE TO JOIN INDISPENSABLE PARTIES

On the Brief:

Kevin J. O'Connor, Esq.

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY.......................................... 4

    A.    The Monmouth County Actions and the ICDR Arbitration ................................... 5

    B.    The PAG/Earle Conspiracy Concerning the '635 Patent Is Revealed................... 5

    C.    The ICDR Arbitrator Finds a Fraudulent Conspiracy Between Earle and
           PAG Concerning the '635 Patent License ............................................................. 6

    D.    Earle Promises to Honor the ICDR Injunction, and Then Immediately
           Violates It................................................................................................................ 8

    E.    Earle Is Sued For A Determination That It Does Not Own the '635 Patent
           Nor Is It the Licensor for the '635 Patent License ............................................... 10

    F.    Earle Agrees to Arbitrate The Question of Whether It Even Owns the '635
           Patent and Whether It Can Claim To Be the Licensor for the '635 Patent
           License ................................................................................................................... 12

    G.    Earle Seeks to Stall Arbitration, and Reveals Even More Damning
           Evidence of Its Violations of the Law ................................................................. 12

LEGAL ARGUMENT...................................................................................................... 16

    POINT I - THE COURT SHOULD CONTINUE THE PRIOR STAY OF THIS
    ACTION AS EARLE'S STANDING IS THE SUBJECT OF AN ONGOING
    ARBITRATION ........................................................................................................ 16

    POINT II - SHOULD THE COURT REACH THE MERITS, THE COMPLAINT
    SHOULD BE DISMISSED FOR FAILURE TO JOIN INDISPENSABLE
    PARTIES .................................................................................................................. 20

CONCLUSION................................................................................................................. 24

#4943794v1

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.S. v. Harrison Twp. Bd. of Educ.*,
  66 F. Supp. 3d 539 (D.N.J. 2014) ..........................................................................16

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) ................................................................................................16

*Cedars-Sinai Med. Ctr. v. Watkins*,
  11 F.3d 1573 (Fed. Cir. 1993) ................................................................................16

*Church & Dwight Co. v. Abbott Lab'ys*,
  No. CIV.A. 05-2142 (GEB), 2006 WL 3000201 (D.N.J. Oct. 20, 2006) ...............17

*Coinstar, Inc. v. Scan Coin N. Am., Inc.*,
  2008 WL 11517627 (N.D. Ill. July 3, 2008) ..........................................................18

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*,
  *528 U.S. 167, 120 S. Ct. 693 (2000)* .....................................................................16

*Max Sound Corp. v. Google, Inc.*,
  147 F. Supp. 3d 948 (N.D. Cal. 2015) ..............................................................17, 18

*Neal v. Asta Funding, Inc.*,
  No. CIV. 13-3438 KM MAR, 2014 WL 131770 (D.N.J. Jan. 6, 2014) ..................18

*Pristec Refining Technologies USA, LLC et al v. Pristec AG et al.*, 3:17-cv-04437-
  PGS-LHG (the "First Federal Action") ...............................................................1, 4

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83, 118 S. Ct. 1003 (1998) .......................................................................16

*Valley Forge Christian Coll.*,
  454 U.S. at 472, 102 S. Ct. 752 ..............................................................................16

*William J. Burns Int'l Detective Agency, Inc. v. New Jersey Guards Union, Inc.*,
  64 N.J. Super. 301 (App. Div. 1960) ......................................................................16

**Statutes**

Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* ................................................................17

#4943794v1

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(1) ...................................................................................1, 16

#4943794v1

## PRELIMINARY STATEMENT

Plaintiff, Earle Refining LLC ("Earle") has sued New Vacuum Technologies LLC ("NVT") and North Jersey Petroleum Operations, LLC ("NJPO" and, with NVT, collectively referred to herein as "Defendants"), alleging patent infringement concerning U.S. Patent No. 10,053,635 (the "'635 Patent"). Because the purported assignment by which Earle claims to have taken ownership of the '635 Patent and the associated exclusive license agreement for the '635 Patent ("the '635 Patent License") are the subject of a pending American Arbitration Association ("AAA") arbitration, the Court should continue its prior stay of this case in compliance with the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* ("FAA").

This is not Earle's first time suing in this Court over these patent and license rights, although in its eyes its position of leverage has increased through its outright thuggery and blatant violations of the law. By way of a June 16, 2017, complaint in the matter styled *Pristec Refining Technologies USA, LLC et al v. Pristec AG et al.*, 3:17-cv-04437-PGS-LHG (the "First Federal Action"), Earle sued a number of parties in this Court concerning a joint venture to pursue valuable petroleum processing in U.S. refineries through the '635 Patent License, Pristec Refining Technologies, USA, LLC ("PRT"). Earle was then, and remains, a minority member of PRT. This Court dismissed the First Federal Action on jurisdictional grounds. The parties' dispute made its way to Delaware, only to make its way *back* to New Jersey in a June 2017 Chancery Division filing in Monmouth County, New Jersey, asserting essentially the same claims.

In 2018, a few months after Earle sued it in the aforementioned Chancery Action, Pristec AG ("PAG") which then stood in the shoes as owner of the '635 Patent and Licensor under the '635 Patent License, sued its American affiliates in a separate, Monmouth County Chancery Division action. It claimed, among other things, that PAG had the legal right to terminate the '635 Patent License which was granted to the American companies due to alleged "misconduct" on the

part of officers and shareholders Anthony Sichenzio ("Sichenzio") and Joseph Laura ("Laura"). The Chancery Court compelled arbitration of that lawsuit, which was heard in 2019 before the International Centre for Dispute Resolution (the "ICDR Arbitration").

Earle participated in the ICDR Arbitration by appearing on behalf of PAG, along with its counsel who is now its trial counsel in this matter, too. After hearing from them and all of the other evidence, the ICDR Arbitrator decisively ruled in favor of Laura and Sichenzio, finding that Earle and PAG had engaged in a fraudulent conspiracy to terminate the '635 Patent License so that it could divert the technology rights to a "Newco" that Earle and PAG had formed. The Arbitrator sought Earle's promise, under oath, that it intended to honor a preliminary injunction that he had already issued when Earle testified. Unbeknownst to all, Earle had already set out to break that promise well before its representative promised it would honor the injunction.

Just days after the ICDR Arbitrator issued a substantial financial award to Laura and Sichenzio as well as a permanent injunction prohibiting PAG from directly or indirectly doing anything further to tinker with the '635 Patent License, Earle and PAG purport to have entered into a transaction that fell squarely within the scope of the permanent injunction. By this transaction, Earle claims to have "purchased" the '635 Patent—which a recent valuation puts the value at over $520,000,000—for a fraction of that price, $500,000. They also claim to have "assigned" the '635 Patent License to Earle—the same exclusive license that the ICDR arbitrator had made the subject of the permanent injunction, to Earle.

In the Monmouth County Action, Sichenzio, Laura and the U.S. companies affiliated with PAG swiftly moved to sue Earle to set aside the PAG/Earle patent/license transaction. In a counterclaim asserted in the litigation, the Court was asked to rule that the transaction was illegal; improper; and to set aside the transaction.

#4943794v1

After the Court denied the parties summary judgment, and a trial date was imminent, Earle and the other parties agreed to arbitrate all disputes before the AAA, including the question of whether Earle owns the '635 Patent and '635 License, and whether it owes damages to its partners in the joint venture for its abject fraud in entering into the transaction in the first place. Earle did everything it could in the ensuing months to stall the AAA arbitration by making a last ditch attempt to bring these very same patent infringement claims within the scope of the arbitration, which was rejected.

Now, in a classic example of a "burying the lede," Earle disclosed the existence of the Pending Arbitration in its Local Civil Rule 11.2 Certification, along with the fact that the Pending Arbitration includes a "counterclaim … that the sale of the '635 Patent to Earle was invalid under Austrian law." (ECF Doc. 1, at pp. 13, PageID: 13). It sued nonetheless, before that issue was even adjudicated, claiming to own the '635 Patent which is the subject of arbitration. Also, buried in its Complaint is a patently false statement that the '635 Patent License, owned by PAI-NV, was terminated. All the Court need do is compare the contents of the Cooperation Agreement cited in the Complaint,[1] with the language in the Complaint, to see how frivolous Earle's new patent infringement case truly is.

By way of an April 21, 2023 Final Award, Arbitrator Anthony J. Parrillo, J.S.C. (Retired) issued a reasoned award which resoundingly rejected each and every one of Plaintiff's claims in the arbitration. (O'Connor Decl., Ex. A). In addressing Respondents' counterclaims, the Arbitrator also rejected Plaintiff's claim—repeated in its Complaint in this case-that the PAI-NV License was terminated; and the Arbitrator rejected the challenge by PAI-NV to the Patent Purchase Agreement.

---

[1] Ex. B to the O'Connor Decl.

Nonetheless, despite a multitude of efforts to get Plaintiff to commit to honoring the Final Award and to get it confirmed quickly and to get it to withdraw the allegations in the complaint that PAI-NV had somehow "lost" its exclusive license, Plaintiff has gone silent and has refused to commit to this process. It has also refused to allow for another voluntary stay of this case, to allow the time for it to challenge the Final Award to expire.

On the merits of the Complaint, should the Court reach it, Defendants alternatively move to dismiss the Complaint on ground that Plaintiff has failed to join indispensable parties (PAI-NV, the exclusive licensee, and PRT, the exclusive sub-licensee). If the Complaint is going to proceed, and given the contents of the Cooperation Agreement which manifest blatant violations of these two licenses, and given the interests of those parties to the outcome of this case in light of the assertion by Plaintiff that their license and sublicense rights have been terminated, and given the risk to Defendants of a multiplicity of suits, they must be joined as parties.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Earle filed a previous case before this Court in connection with these same patent and license rights, by way of a June 16, 2017 complaint in the matter styled *Pristec Refining Technologies USA, LLC et al v. Pristec AG et al.*, 3:17-cv-04437-PGS-LHG (the "First Federal Action"). (*See* ECF # 10, Declaration of Joseph Laura ("Laura Decl."), Ex. A).

The First Federal Action, just like the claims in the Pending Arbitration, concern a joint venture between Earle and Pristec America, Inc. (Nevada) ("PAI-NV") to pursue valuable petroleum processing in refineries in the U.S. through the licensing of the '635 Patent by PAI-NV to a joint venture of which Earle was and remains a minority member, Pristec Refining Technologies USA, LLC ("PRT"). (*See* Ex. A, ¶ 1). In October, 2017, the Court dismissed the First Federal Action on jurisdictional grounds. (Laura Decl., ¶ 5).

A.      **The Monmouth County Actions and the ICDR Arbitration.**

After the First Federal Action was filed, PAI-NV sued Earle in Delaware, and Earle filed a competing action on December 1, 2017 in the Monmouth County, New Jersey Chancery Division. Ultimately the Delaware case was discontinued[2] in early 2018 and the parties continued with Earle's action in Monmouth County, where Earle asserted essentially the same claims it had asserted in the First Federal Action. (*Id.*, ¶ 6).

In February 2018, a few months after Earle had sued it in the aforementioned Chancery Action, Pristec AG ("PAG"), the assignor of the '635 Patent, sued Joseph Laura and another officer and board member of PAI-NV (Anthony Sichenzio), in a separate, Monmouth County Chancery Division action. PAG claimed, among other things, that it had the legal right to terminate the '635 Patent License granted to PAI-NV in October 2013, allegedly due to "misconduct" on the part of Sichenzio and Laura. (*Id.*, ¶ 7).

Laura and Sichenzio immediately moved the Chancery Court to compel PAG to arbitrate its new lawsuit. That arbitration was heard in 2019 before the International Centre for Dispute Resolution (the "ICDR Arbitration"), which is an affiliate of the AAA dedicated to resolving international disputes. (*Id.*, ¶ 8).

B.      **The PAG/Earle Conspiracy Concerning the '635 Patent Is Revealed.**

It was through facts revealed by Earle in the lead up to the filing of the First Federal Action that Laura and Sichenzio obtained concrete evidence that Earle had been conspiring with PAG to engineer a phony "disassociation" of PAI-NV and the termination of the '635 Patent License to the petroleum processing technology. (*Id.*, ¶ 9).

---

[2] The Delaware action was improperly discontinued by PAG who conspired with Earle to pursue Newco and to simultaneously pursue PAG's frivolous claims against Sichenzio and Laura, which were ultimately rejected in the ICDR Arbitration.

#4943794v1

The First Federal Action complaint laid out in detail in paragraphs 169 through 186 that Earle and PAG had, during early 2017, secretly negotiated a purported "Letter of Intent" for an entity they called "Newco," with the intention of granting to Newco the very patent license rights that flowed to PRT (of which Earle had served as Manager) through my company, PAI-NV. (Ex. A, ¶¶ 172-173)(describing the agreement for "Newco"). (*Id.*, ¶ 10).

By the time Laura and Sichenzio moved to compel arbitration of the new PAG case against them in early 2018, they had learned even more of this deception and fraud on the part of Earle and PAG in connection with the affairs of PRT. Prior to suing them, PAG, who by then had realized that it had made a grave mistake in colluding with Earle, gave Laura and Sichenzio documentary evidence that it had worked in secret with Earle in the latter part of 2016 and into early 2017, to intentionally terminate the '635 Patent License. They did so with the intention of pursuing "Newco" and freezing out all of the American investors who had funded the development of the '635 Patent. (*Id.*, ¶ 11).

**C.    The ICDR Arbitrator Finds a Fraudulent Conspiracy Between Earle and PAG Concerning the '635 Patent License.**

In the ensuing ICDR arbitration which was held in early 2019 over the course of six days, Earle appeared on behalf of PAG, along with lead counsel in this action, Robert Schiappacasse, who admitted to this scheme under oath. Laura and Sichenzio presented the ICDR arbitrator with clear and convincing evidence of a fraudulent conspiracy between Earle and PAG, which was materially assisted by Schiappacasse. Earle and its attorneys were shown to have schemed behind the back of Earle's co-member in PRT (PAI-NV) to cause PAG to terminate the '635 Patent License so that Earle and PAG could form "Newco." (*Id.*, ¶ 12).

The evidence showed that Earle intended to divert the patent and license rights to Newco, thereby cutting out the rights of Laura, Sichenzio, and all of the American investors in PAI-NV.

The evidence also showed that Sills Cummis, who purported to be simultaneously representing the interests of both Earle and PRT, ghost wrote the very license termination notice that PAG used to kick off the cascading effects intended by Earle and PAG to lead to the demise of Sills' own client, PRT. (*Id.*, ¶ 13). The evidence also showed that the old adage "there is no honor among thieves," was alive and well as between Earle and PAG. After Schiappacase secretly drafted the '635 Patent license termination notice and induced PAG to send it to PAI-NV, Schiappacase caused a wholly illegal "disassociation letter" he drafted to be sent, purportedly on behalf of PRT, to PAI-NV. Through this "disassociation letter," Earle and Sills Cummis now claimed that Earle owned all of PRT, along with the '635 Patent License. (*Id.*, ¶ 14).

The ICDR Arbitrator decisively ruled in favor of Laura and Sichenzio, finding that they had proven this "PAG/Earle conspiracy" by clear and convincing evidence. The Arbitrator specifically found that Earle had engaged in a fraudulent conspiracy with PAG to cancel the '635 Patent License:

> 225.   As set out in the factual recitals above, Respondent and the Earle Parties were clearly conspiring to freeze Claimants out of the U.S. Pristec Companies and transfer rights to the Pristec Technology to companies controlled by Earle in the weeks leading up to the execution of the SAA.  The quick-fire series of events underlying this conspiracy – *from* the January 1, 2017 License Performance Guaranty *to* the January 19, 2017 letter accusing PAI-NV of committing material breaches of the PRT Operating Agreement and the PRT License *to* Earle's January 20, 2017 ghost-writing of the draft Cease and Desist Letter *to* Nuerk sending the Cease and Desist Letter to Laura on January 21, 2017 *to* the February 7, 2017 letter from Earle to Laura claiming that PAI-NV had been "*disassociate[ed] from PRT*" because of the Cease and Desist letter – is clear and convincing evidence in my opinion.  Moreover, this was all done at a time when Laura was Chairman of Respondent's Supervisory Board, yet Laura was left out of the dealings between Respondent and the Earle Companies.

> 226.   Based on this evidence, I conclude that Respondent's private dealings with Earle constituted material information that should have been disclosed to Claimants.  I also conclude that had Claimants been informed about this by Respondent, they would have refused to enter into the SAA with Nuerk or, at minimum, would have demanded additional or different terms protecting their rights.

228.   Respondent's explanations for why this activity was not fraudulent are also not persuasive, in my opinion.  First, the fact the Parties had long been discussing a potential consolidation of the U.S. Pristec Companies with PAG does not justify the concealment of the PAG/Earle conspiracy from Claimants.  If anything, this fact would have only made it easier to persuade Claimants to enter into the SAA.

(*See* Award, Laura Decl. Ex. B, at ¶¶ 225-28). The ICDR Award was confirmed by the Southern District of New York. (*Id.*, Ex. C).

## D.   Earle Promises to Honor the ICDR Injunction, and Then Immediately Violates It.

The ICDR Arbitrator sought Earle's promise, under oath, that it intended to honor a preliminary injunction that he had already issued when Earle testified, prohibiting Earle and PAG from consummating their "Newco" deal. (*Id.*, Ex. D). Unbeknownst to all, Earle, through its owner Thomas J. Earle ("TJ Earle") had already set out to break that promise well before he stated under oath that Earle would honor the injunction. Just days after the ICDR Arbitrator issued a substantial financial award to Laura and Sichenzio as well as a permanent injunction prohibiting PAG from directly or indirectly doing anything further to alienate the U.S. affiliates' license rights to the '635 Patent, Earle and PAG purport to have entered into a transaction that fell squarely within the scope of the permanent injunction. (*See* Assignment, Complaint Ex. 2; Laura Decl., ¶ 18).

On or about July 31, 2019, Earle caused a letter to be sent to Laura in which it claimed to have purchased the '635 Patent and to have assumed the role of "Licensor" under the '635 Patent License. (Laura Decl., ¶ 23 & Ex. E). The impact of this illegal transaction is at least threefold. One, Earle, who had already been shown to be a fraudster intent on terminating PAI-NV's license, would not only gain control of the patent but would become the "Licensor." This would set the stage for what came next (discussed below), which included Earle launching its own business with the technology in blatant violation of the '635 Patent License. (*Id.*, ¶ 24).

8

Two, at the time of the transaction in question, and as reflected in the ICDR Award, Innovative Crude Technologies, Inc. ("ICT") owned 35,000 shares of PAG. (Award, Ex. B, at xliii ("ICT is hereby the lawful owner of 35,000 shares of PAG"). This is approximately twenty (20%) of PAG's outstanding shares. Thus, by virtue of this illegal transaction, if upheld, Earle would deprive ICT of roughly one third of PAG's profits from the '635 Patent, and, likewise, render PAG insolvent[3] by selling off its largest asset for 1/1000 of its value. (*Id.*, ¶ 25). Three, ICT owned an upstream oil processing patent that was largely dependent on the '635 Patent. (*Id.*, ¶ 26).

By this transaction, which Earle claims gives it the legal right to sue now before this Court, Earle claims to have purchased the '635 Patent—which it and PAG had secretly valued at over $520,000,000—for a fraction of that price, $500,000. Earle also claims to have assigned the '635 Patent License that was the subject of the permanent injunction, to Earle. (*Compare id.*, *with* ICDR Award, Ex. B, at xliv-xlv). If one places side by side the secret Earle valuation that Earle completed during the time that an injunction was already in place (Laura Decl., Ex. E), with the Patent Assignment (Complaint, Ex. 2), you can see that Earle claims to have gained ownership of the '635 Patent and '635 Patent License for a price ($500,000) that is but a small fraction of what Earle believed it was worth. (Laura Decl., ¶ 20).

This, despite the ICDR Permanent Injunction, as follows:

> "The October 1, 2013 "Patent, Technology and Know-How License Agreement"
> entered into by and between Respondent and PAI-NV (the "PAG-PAI License")
> remains in full force and effect notwithstanding the rescission of the SAA ***and,***
> ***further, Respondent (whether directly or through its officers, employees or***
> ***agents) is enjoined from terminating the PAG-PAI License without the***

---

[3] As Earle mentions in its Complaint in this action, "[f]ollowing Earle's purchase of the '635 Patent, [PAG's] creditors commenced insolvency proceedings against [PAG] in Austria Commercial Court, Vienna…" (Cp., ¶ 11, ECF Doc. 1). PAG's principal, Ruediger Neurk, and Earle therefore directly undermined the ownership rights of ICT in PAG and Laura and Sichenzio's ability to recover from PAG on the ICDR Award.

#4943794v1

***internal approvals required by Austrian law, including the approval of PAG's Supervisory Board.***

Respondent, whether directly or through its officers, employees or agents, is permanently restrained and enjoined from: (a) taking any actions to implement or consummate the terms of the purported settlement agreement in the litigation pending in the Chancery Division in Monmouth County, captioned *Pristec Refining Technologies et al. v. Pristec AG*, et al. (No. MON-C-175-17) (the "First Monmouth Action"), including causing or permitting ICT, PAI-NV or PAI-NJ to implement or consummate the terms of that settlement agreement; (b) ***compromising the claims or potential claims of ICT, PAI-NV or PAI-NJ in the Monmouth Action or otherwise; and (c) taking any other actions (including causing ICT, PAI-NV or PAI-NJ to take any actions) to enter into, implement or consummate the terms of any other settlement agreements or transactions of any kind that would impact the operations, ownership or rights of ICT, PAI-NV and PAI-NJ, including rights in the cold cracking Pristec Technology or any other technology."*** (ICDR Award, Ex. B, at xliv-xlv)(emphasis added).

In September 2019, shortly after the ICDR Award was rendered, Laura and Sichenzio traveled to Austria to meet with PAG. During this trip, PAG representatives reluctantly provided them with a copy of the purported "United States Patent Assignment" contained within Exhibit 2 to the Complaint which Earle claims gives it the legal right to commence this action. They only cooperated with Laura and Sichenzio since they had secured such a large judgment, they could push PAG into involuntary bankruptcy. PAG's representative, Ruediger Nuerk, admitted that the transaction that he had entered into with Earle was improper and offered to work with Laura and Sichenzio to invalidate it. (*Id.*, ¶ 21).

**E.    Earle Is Sued For A Determination That It Does Not Own the '635 Patent Nor Is It the Licensor for the '635 Patent License.**

In the Monmouth County Action, PAI-NV, Laura and Sichenzio thereafter moved swiftly to sue Earle to set aside the PAG/Earle patent/license transaction. In a counterclaim asserted in the litigation, the Court was asked to rule that the transaction was illegal; improper; and to invalidate the transaction, which would result in the reversion of the '635 Patent rights to the inventors. (*Id.*, Ex. F, ¶¶ 154-172).

Laura and Sichenzio secured an expert in Austrian law, Dr. Michael Praeger, who has concluded that the Earle transaction is illegal and void. (*Id.*, ¶ 23 & Ex. G). Earle never challenged the authority of the Monmouth County Chancery Division to decide the validity of the "United States Patent Assignment" contained within Exhibit 2 to the Complaint in this action or the validity of the purported assignment of the exclusive license to Earle. Indeed, Earle has secured its own expert witness to opine that its actions in purchasing the patent rights were legal. (*Id.*, ¶ 24).

Among other testimony secured in the Monmouth County action was the admission by Earle's counsel, Robert Schiappacase, Esq. (lead counsel in this action) that he caused Earle to take unilateral action in declaring itself the sole owner of PRT and of the '635 Patent License, which action he conceded was done in violation of the PRT Operating Agreement. (*Id.*, ¶ 25 & Ex. H, pp. 60:1-65:2).

Yet, despite the obvious fact that its client, Earle, never truly owned PRT, Sills Cummis[4] filed the First Federal Action on behalf of PRT claiming that Earle owned all of the company, and it did so again in Monmouth County. This unlawful action by Earle has effectively scuttled the PRT joint venture and any hopes of continuing with commercialization of the Pristec Technology until the Pending Arbitration is resolved. (*Id.*, ¶ 26).

Instead of challenging the authority of the Court to adjudicate such claims, Earle actively participated in discovery for years, and ultimately moved for summary judgment on its fraud claim, which was denied on August 11, 2020. (*Id.*, ¶ 33 & Ex. I). The Court then set the case down for a trial date. (*Id.*, ¶ 34).

---

[4] Sills, Cummis & Gross, P.C. ("Sills") was sued for its actions. Those claims are tolled while the parties pursue the arbitration. (*See* Laura Decl., Ex. J, at 1 (noting that the claims against Sills "have, on agreement of the parties asserting/defending such claims, been severed and tolled.").

#4943794v1

**F.    Earle Agrees to Arbitrate The Question of Whether It Even Owns the '635 Patent and Whether It Can Claim To Be the Licensor for the '635 Patent License.**

With a trial date of the Monmouth County Action imminent, Earle and the other parties to that action agreed to arbitrate all disputes before the AAA, including the question of whether Earle owns the '635 Patent and License, and whether it owes damages to its partners in the joint venture for its abject fraud in entering into the transaction in the first place. (*Id.*, ¶ 35 & Ex. J & K). If the arbitration determines that Earle has never validly owned the '635 Patent and '635 Patent License, this lawsuit will be wholly unnecessary. If the arbitration determines that Earle does, in fact, own the '635 Patent and '635 Patent License, then PAI-NV and PRT both have the legal right to intervene in this action and to assert claims in this action stemming from Earle's blatant violation of the exclusive license (and sublicense), as is mentioned below.

**G.    Earle Seeks to Stall Arbitration, and Reveals Even More Damning Evidence of Its Violations of the Law.**

Since 2021, Earle has sought to stall the AAA arbitration in several ways, including a December, 2021 letter to the Court in Monmouth County asking the Court to relist the matter for trial, and refusing to proceed before the AAA. When that failed, and with the Honorable Judge Anthony Parrillo, J.S.C. (Retired) appointed and ready to schedule an arbitration, Earle most recently made a last ditch effort to bring these very same patent infringement claims within the scope of the Pending Arbitration. (Laura Decl., ¶¶ 39-40).

In the context of making its effort to bring patent infringement claims within the Pending Arbitration, Earle provided Judge Parrillo (and therefore Laura) with a copy of a "Cooperation Agreement" dated October 7, 2021 between Earle and the purported administrator of PAG's bankruptcy estate, RedMax GmbH & Co. KG ("Redmax"). (*Id.*, ¶ 41 & Ex. L).

Within the Cooperation Agreement are statements which belie the allegation in this case that PAI-NV's license was ever terminated, and statements which show that Earle is acting in flagrant violation of the '635 Patent License. For instance, Earle admits therein that it has built machinery using the very PAG patents and license rights that are the subject of the Pending Arbitration, and which the ICDR arbitrator has protected through the ICDR's permanent injunction. (*See id.*, at 2/22). The agreement itself incorporates by reference a piping diagram and schematic making clear that the technology rights are being allegedly held in the name of Earle Oil, who has never been granted any such rights.  This same document also contains a critical admission for this Court's consideration, and likewise betrays a further breach of Earle's fiduciary duty as manager of PRT. In the Cooperation Agreement, Earle agreed with PAG's alleged successor (who is undoubtedly bound by the permanent injunction) to "***provide all information and all necessary cooperation as may be required to contest or procure the termination of the*** ['635 Patent License]." (*Id.* at 9/22).

In other words, the Manager of PRT (Earle) conceded in this agreement that the '635 Patent License has never been validly terminated, and has once again been caught signing a document committing to an action intended to destroy PRT. The referenced "license agreement" in this "Cooperation Agreement" is the very same license agreement the ICDR arbitrator found that Earle had conspired with PAG to unlawfully terminate in the first place (the '635 Patent License). The arbitrator permanently enjoined them from terminating it again without due process of law and following the agreement.

Earle is once again shown for an incredible lack of candor to this Court, when it alleged in paragraph 25 of the Complaint in this new action that PAI-NV is merely "a prior exclusive licensee of the '635 Patent in the United States." (Cp., ¶ 25). The issues of whether Earle is the legitimate

13

licensor, and whether the exclusive license continues to exist in favor of PAI-NV (and by extension, PRT) are two issues that go to the heart of Earle's standing, and are yet to be resolved.[5]

The '635 Patent License, in Section 4.B, grants the Licensor the legal right to bring a patent infringement claim. (Ex. M to Laura Decl., § 5.A). Section 5.C obligated Earle to "consult and cooperate" with PAI-NV on any such claim, which Earle has never done in this case. The '635 Patent License prohibits anyone in the position of "Licensor" (which Earle claims to be) from doing the things it admitted to doing in its "Cooperation Agreement" with Redmax. For instance, in Section 7.H, Licensor agreed that it "shall not retain any copies of any of the Licensed Technology other than for copies of patents that my (sic) issue therefrom." (*Id.*, § 5.A).

This is because PAI-NV is granted

> "the exclusive right and license to use the Licensed Technology to make, use, import and sell Licensed Products and to practice Licensed Processes and provide Licensed Services in the Primary Territory during the term of this Agreement unless sooner terminated as provided in this Agreement." (*Id.*, § 2.A).

As the Court can see from the Cooperation Agreement, where Earle manifested an intention to work with Redmax to try to terminate the '635 Patent License, Earle confirmed for Redmax that "it has full knowledge of the arbitral award issued against [PAG] on 10 June 2019 in the arbitration proceeding administered by the [ICDR] under case No. 01-18-0001-9729." (Cooperation Agreement, ¶ 3.6, at 7/22). In further demonstration of the lawlessness of Earle and PAG's successor, Redmax, the Preamble to the Cooperation Agreement contains multiple references to Earle's blatant violation of the '635 Patent License, including these:

---

[5] Earle did disclose the existence of the Pending Arbitration in its Local Civil Rule 11.2 Certification, as well as the fact that the arbitration will determine its right to sue as the patent owner. (ECF Doc. 1, at pp. 13, PageID: 13).

D.     Earle has access to a facility in the U.S. (State of Louisiana) to utilize the technology that is based on the U.S. Patents and has meanwhile developed its own know-how with respect to the use of the technology. RedMax has acquired the technical documentation of Pristec AG as provided by the insolvency administrator. Earle is prepared to grant RedMax access to the facility and its equipment for the purpose of testing the technology based on the Base Patents.

E.     The parties intend to cooperate, under the terms of this Agreement in light of a potential further development of the technology based on the Base Patents, by exchanging existing and future know-how in order to render the technology marketable.

(Cooperation Agreement, Ex. L, at Preamble D & E; *see also id.*, §§ 1.1-1.9 (where Earle and Redmax agree to all manner of activities that are flatly prohibited by the License Agreement).

15

## LEGAL ARGUMENT

## POINT I

## THE COURT SHOULD CONTINUE THE PRIOR STAY OF THIS ACTION AS EARLE'S STANDING IS THE SUBJECT OF AN ONGOING ARBITRATION

Since it is abundantly clear that, until the Final Award is confirmed, Earle cannot show that it has standing to pursue the patent infringement claims it has brought in this action, and since it is clear that the disputes in the Pending Arbitration overlap certain of the claims made by Earle in its Complaint (such as its new claim that PAI-NV has no rights under the '635 Patent License, which was flatly rejected by the Arbitrator in the AAA Arbitration) which go to standing, the Court should continue the stay of this case until such time as the Final Award is confirmed.

Any contrary ruling would put Defendants in the position of having to admit or deny "facts" that remain disputed unless and until Plaintiff concedes the validity of the Final Award. Plaintiff improperly seeks to put Defendants in the position of prematurely taking a stance on disputed facts while it sits and waits. It can be expected, given the prior gamesmanship by Plaintiff that has played out over the past six years, that it will turn around and challenge aspects of the Final Award while seeking to keep some aspects intact. The only fair solution, and one required by the FAA, is to continue the stay of this case until the Final Award is fully confirmed.

Earle prematurely brought the instant matter against Defendants, alleging that they infringed upon the '635 Patent and further alleging that the '635 Patent License was somehow extinguished and failed to even name, much less consult with, either PAI-NV or PRT. However, Earle's claims are the subject of the Pending Arbitration. Accordingly, until Earle prevails in the Pending Arbitration in the form of a confirmed Final Award, it lacks standing to bring this action and it should be stayed, as the Court did previously. To allow a contrary result would be to subject Defendants to the time and expense of litigation that may in fact be entirely avoided if the Final Award ends up

16

being challenged by Earle and upended. It would also waste this Court's precious and limited resources.

It is black letter law that "[a] party who seeks to invoke the Court's jurisdiction must demonstrate that he has standing by showing that he has suffered an 'actual or threatened injury,' that the injury is traceable to the conduct of the defendant, and that the injury is 'likely to be redressed by a favorable decision.'" *A.S. v. Harrison Twp. Bd. of Educ.*, 66 F. Supp. 3d 539, 545 (D.N.J. 2014)(quoting *Valley Forge Christian Coll.,* 454 U.S. at 472, 102 S. Ct. 752). "This triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence." *Id.* (quoting *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 103–04, 118 S. Ct. 1003 (1998)). Furthermore, "a plaintiff must demonstrate standing separately for each form of relief sought." *Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 185, 120 S. Ct. 693 (2000)).[6]

The record shows that Earle signed its name to the Arbitration Agreement and agreed therein to arbitrate before the AAA the question of whether its purported patent and license purchase, was legal and the relative rights of PAI-NV and PRT to the Pristec Technology.  It is well settled that an arbitration "agreement is to be construed according to the usual methods of contract interpretation; from the language of the parties, a mutual, reasonable, and meaningful design is sought. The agreement will be fairly and liberally construed so as to give maximum effect to the intentions of the parties." *William J. Burns Int'l Detective Agency, Inc. v. New Jersey Guards Union, Inc.*, 64 N.J. Super. 301, 308 (App. Div. 1960) (internal citations omitted); *see also AT&T*

---

[6] Where, as here, a patent infringement claim is made and there is a motion challenging subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the Court is not restricted to the facts in the face of the pleadings and may review evidence extrinsic to the pleadings. *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583-84 (Fed. Cir. 1993).

*Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (explaining that the Federal Arbitration Act ("FAA), requires "plac[ing] arbitration agreements on equal footing with other contracts and enforce them according to their terms.") (internal citations omitted).[7]

Here, it is abundantly clear that Earle's entitlement to sue under the '635 Patent License as Licensor of the '635 Patent is challenged and is yet to be finally determined in the ongoing arbitration governed by the FAA. Courts have not hesitated to dismiss or stay actions in this instance. For instance, in *Church & Dwight Co. v. Abbott Lab'ys*, No. CIV.A. 05-2142 (GEB), 2006 WL 3000201, at *4 (D.N.J. Oct. 20, 2006) the Court dismissed, without prejudice, defendant's counterclaims pertaining to certain patents since it was not an exclusive licensee[8] of the patents at issue and, therefore, did not have standing to counterclaim for patent infringement.

In addition, courts throughout the country have dealt with this problem in the same manner when faced with patent infringement claims where ownership was the subject of ongoing litigation or arbitration. For instance, in *Max Sound Corp. v. Google, Inc.*, 147 F. Supp. 3d 948 (N.D. Cal. 2015), the Court dismissed a patent infringement case where there was an arbitration pending regarding ownership of the patent. The Court stated that "[t]he essential issue regarding the right to sue on a patent is who owns the patent" and a patent infringement plaintiff "must demonstrate that it held enforceable title to the patent at the inception of the lawsuit to assert standing." *Id.* at

---

[7] Paragraph 2 of the Arbitration Agreement states, "All matters relating to the Arbitration will be governed by the Federal Arbitration Act (9 U.S.C. §§ 1 et seq.) ('FAA')."

[8] Unlike Abbott in that case, PAI-NV *is* an exclusive licensee of the '635 Patent, and *does* have a direct infringement claim against Earle for its blatantly illegal actions. As noted above, Earle's allegation to the contrary in the Complaint is belied by its admissions in the Cooperation Agreement (which is referred to in the Complaint), to the effect that it obligated itself to cooperate with Redmax to work together to try to terminate PAI-NV's license (which has never occurred). In the Cooperation Agreement, Ex. L to the Laura Declaration, Earle agreed with PAG's alleged successor (who is undoubtedly bound by the permanent injunction) to "***provide all information and all necessary cooperation as may be required to contest or procure the termination of the*** ['635 Patent License]." (*Id.* at 9/22). This Cooperation Agreement is referred to in paragraph 14 of Earle's Complaint.

#4943794v1

952. Accordingly, it stated further that, "if the original plaintiff lacked Article III initial standing, the suit must be dismissed, and the jurisdictional defect cannot be cured after the inception of the lawsuit." *Id.*

In *Coinstar, Inc. v. Scan Coin N. Am., Inc.*, 2008 WL 11517627 (N.D. Ill. July 3, 2008), the Court held that if ownership of the patent at issue was an arbitrable issue, then it must yield to the arbitration and stay the litigation. Ultimately, the court decided to stay the proceedings, holding that if the arbitrator found plaintiff was not the owner of the patent, it would have no standing to pursue the infringement action and all issues in the case would be disposed of. Alternatively, the Court held that if Coinstar could prove to the arbitrator that it owned the patent then it could have the stay lifted and proceed with the infringement litigation.

Defendants suspect that Earle will seek to argue that because NVT is not a party to the arbitration, it cannot invoke the existence of the Pending Arbitration to stay or dismiss this action, and must wait for PAI-NV to formally intervene in this action and for PAI-NV to raise the issue of the Pending Arbitration on its own behalf first. This is simply not the law, and this argument was previously rejected by this Court in issuing the prior stay. Courts in this district have explained that "[w]hen the parties and issues significantly overlap between a court proceeding and an arbitration, a court may stay the entire court action. That is true even where the overlap is not complete, for example, even if some of the parties or issues are not subject to arbitration." *Neal v. Asta Funding, Inc.*, 2014 WL 131770, at *3 (D.N.J. Jan. 6, 2014) (collecting cases).

Here, Earle appears to have deliberately left PAI-NV, PRT, and several of the original inventors off the caption in order to fare better in a motion to dismiss. Yet, the Complaint and attachments demonstrate the total overlap of issues and fact that there are overlapping parties, despite Earle's clever pleading tactics. For instance, Earle is obviously a party in both the Pending

19

Arbitration and new action. PAG is specifically mentioned in the Complaint and was a party to the underlying action until its insolvency, caused by Earle's actions in denuding PAG's assets. Earle mentions that original inventors Chernikov and Castillo are inventors on the NVT patent publication (*id.*, ¶¶ 21-23), and Earle knows full well that Castillo was a key witness in the Pending Arbitration and is a Board member of both PAI-NV and PRT. Laura features prominently in Earle's grievances (*id.*, ¶¶ 25-26), but Laura is a party to the Pending Arbitration, as well as the founder and President of PAI-NV and ICT, as well as a member of NVT and NJPO. Lastly, the Complaint mentions that PAI-NV is the "prior exclusive licensee" (a false assertion, as set forth above), and PAI-NV is a party to the Pending Arbitration.

These are the precise circumstances in which the FAA requires the stay of an action pending final completion of an arbitration.

### POINT II

### SHOULD THE COURT REACH THE MERITS, THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO JOIN INDISPENSABLE PARTIES

The Complaint should be dismissed under FRCP 12(b)(7) and 19 on grounds that PAI-NV and PRT are both indispensable parties that are clearly subject to jurisdiction here and must be joined. The Complaint and its exhibits illustrate the central role of those non-parties by making repeated reference to them and their technology rights, claiming that those non-parties have no legal rights.  The Complaint starts with the faulty premise that PAI-NV *is not* the exclusive licensee, which allegation was undoubtedly made in bad faith to avoid this motion and which allegation directly triggers the rights of PRT as well. (*See, e.g*., Cp., Exs. 1 and 2 expressly referencing PAI-NV's license rights; Cooperation Agreement, O'Connor Decl. Ex. B which is incorporated by reference into the Complaint at ¶ 14; ¶ 25 (alleging that PAI-NV is the "prior exclusive licensee").

As shown by the Cooperation Agreement and is explored in detail in the Laura Declaration and set forth above, Plaintiff has engaged in blatant violations of the PAI-NV license (which is governed by New York law),[9] and has operated under the assumption that PAI-NV and PRT no longer have any license rights. ***This is exemplified by the Cooperation Agreement which actually affixes engineering drawings showing that a non-party to the PAI-NV exclusive license and PRT Sublicense, Earle Oil, has somehow been given license rights to the Pristec Technology***. As set forth in detail above, this directly triggers the exclusive license rights of both PAI-NV and PRT who are entitled to be, and required to be, joined in this action to effectuate complete relief as to all parties. These are the precise circumstances in which a party must be joined in the action, or the action should be dismissed. *See generally* 5C Fed. Prac. & Proc. Civ. § 1359 (3d ed. 2019).

The requirement for joinder is particularly essential where, as here, a Court is dealing with claims relating to patented and licensed technology where it is unclear whether the actual patent/license holder has even been joined in the action. *See, e.g., Advanced Video Techs. LLC v. HTC Corp.*, 2016 WL 3434819 (S.D.N.Y. June 14, 2016) (where claims implicate holder of patent who has not been joined, case should be dismissed); *Joint Marketing Int'l, Inc. v. L&N Sales & Marketing, Inc.*, 2006 WL 1995130, *5 (E.D.N.Y July 14, 2006) (granting motion to dismiss for failure to join patent holder as necessary party, but staying dismissal to allow for joinder of that party); *Channel Master Corp. v. JFD Electronics Corp.*, 260 F. Supp. 568 (E.D.N.Y. 1967) (same).

Indeed, the PAI-NV License Agreement contemplates joinder of PAI-NV to any infringement action. (Laura Decl., Ex. M, at 3). Here, Earle refuses to acknowledge the validity of the Final Award or to say whether it will even confirm it, much less recognize PAI-NV's status as

---

[9] Laura Decl., Ex. M, at 6 ("This Agreement shall be governed, construed, and enforced in accordance with the laws of the State of New York, [USA].").

#4943794v1

an exclusive licensee.  Instead, it claims to be the patent holder with free reign to use the technology any way it sees fit in the U.S.

Until the Final Award is confirmed, Earle simply has no standing to bring this action. Earle also has failed to join the exclusive licensee, PAI-NV, and sub-licensee, PRT, while repudiating those parties' legal rights in its complaint. These two parties must be joined in the action in fairness both to Defendants because the Complaint and its exhibits demonstrate direct violations of the license and sublicense by Earle and its affiliate, Earle Oil. Such joinder is essential to effectuate full and complete relief. *First Fin. Marketing Svs. Group, Inc. v. Field Promotions, Inc.*, 286 F. Supp. 295, 298-99 (S.D.N.Y. 1968).

The mere juxtaposition of the PAI-NV License Agreement (Laura Decl., Ex M) with the Cooperation Agreement (O'Connor Decl., Ex. B), demonstrates that far from stating a legal claim for infringement, the Complaint actually shows blatantly illegal acts on the part of Earle in the unlawful development of the Pristec Technology and retention of the Licensed Technology for illicit purposes granted to a non-party to the license (Earle Oil). The grant of license to PAI-NV is and remains exclusive and all-encompassing, and left no room for Plaintiff or some "affiliate," Earle Oil, to actively build machinery in Louisiana under Earle Oil's name:

> 2.   Grant of License
>
> A.   Licensor hereby grants to Licensee the exclusive right and license to use the Licensed Technology to make, use, import, and sell Licensed Products and to practice Licensed Processes and provide Licensed Services in the Primary Territory during the term of this Agreement unless sooner terminated as provided in this Agreement.

(Laura Decl., Ex. M, at 2). FRCP 19 requires that this action be dismissed until proper joinder of PAI-NV and PRT so that they can protect their interests in connection with the assertion of infringement claims by Earle and associated claims that the PAI-NV and PRT license agreements have been extinguished, and to assert all appropriate counterclaims to protect their license rights

in the Pristec Technology.

This Court, in *In-Tech Marketing Inc. v. Hasbro, Inc.*, 685 F. Supp. 436 (D.N.J. 1988) recognized the circumstances in which an exclusive licensee must, under FRCP 19, be joined in an action like this one.  Providing a detailed analysis of the case law on this point, the Court summarized the rule set forth in *Waterman v. Mackenzie*, 138 U.S. 252, 11 S. Ct. 334 (1890):

> "The monopoly thus granted is one entire thing, and cannot be divided into parts, except as authorized by [patent law]. The patentee or his assigns may, by instrument in writing, assign, grant and convey, either 1st, the whole patent, comprising the exclusive right to make, use and vend the invention throughout the United States; or, 2nd, an individual part or share of that exclusive right; or 3rd, the exclusive right under the patent within and throughout a specified part of the United States.... Any assignment or transfer, short of one of these, is a mere license, giving the licensee no title in the patent, and no right to sue at law in his own name for an infringement."  [(*Id.* at 439)].

The Court went on to recognize that, where as here, there is "an exclusive right to make, use and vend, either the entire patent or an undivided portion thereof, or of an exclusive right to make, use and vend within a specific geographical area, the transaction is considered an assignment.  This is true despite language in the instrument to the contrary."  *Id.*  In other words, "[a]n exclusive licensee…has the promise of the patent owner that others shall be excluded from practicing the patent within the field of use for which the license was given."  *Id.* at 440.  In that circumstance, as was recognized by the Court in *In-Tech* and many of the cases cited therein, failing to require the joinder of the exclusive licensee runs the substantial risk of prejudice, and could subject the existing defendants to a multiplicity of suits and claims.  Since Plaintiff failed to join PAI-NV and PRT and deceptively pled this case in an effort to skirt that obligation, the complaint should be dismissed.

## **CONCLUSION**

For the foregoing reasons, the Court should stay this action pending final confirmation of the AAA Final Award and, should it reach the merits of the Complaint, dismiss this action without prejudice for failure to join indispensable parties.

Dated: May 19, 2023                              PECKAR & ABRAMSON, P.C.

By: */s/ Kevin J. O'Connor*
KEVIN J. O'CONNOR, ESQ.
70 Grand Avenue
River Edge NJ 07661
201-343-3434
*Attorneys for Defendants*

24