**PECKAR & ABRAMSON, P.C.**
70 Grand Avenue
River Edge, NJ 07661
Telephone: (201) 343-3434
Kevin J. O'Connor, Esq. KOConnor@pecklaw.com
Kevin M. Foltmer KFoltmer@pecklaw.com
Attorneys for Defendants

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| EARLE REFINING, LLC,<br><br>        Plaintiff,<br><br>vs.<br><br>NEW VACUUM TECHNOLOGIES, LLC<br>and NORTH JERSEY PETROLEUM<br>OPERATIONS, LLC,<br><br>        Defendants, | Case No. 3:22-cv-04469-RK-DEA<br><br>ECF CASE – Electronically Filed |

**REPLY BRIEF IN FURTHER SUPPORT OF MOTION TO STAY THE ACTION PENDING COMPLETION OF ARBITRATION OR IN THE ALTERNATIVE TO DISMISS FOR FAILURE TO JOIN INDISPENSABLE PARTIES**

On the Brief:

Kevin J. O'Connor, Esq.

#4969660v1

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ................................................................................................ 1

LEGAL ARGUMENT ................................................................................................................. 3

POINT I .......................................................................................................................................... 3

    THE COURT SHOULD CONTINUE THE PRIOR STAY OF THIS ACTION
    AS EARLE'S STANDING AND RELATED OVERLAPPING ISSUES ARE
    THE SUBJECT OF AN ONGOING ARBITRATION ....................................................... 3

POINT II ........................................................................................................................................ 5

    EARLE TOTALLY SIDE-STEPS THE FACT THAT PAI-NV AND PRT ARE
    NECESSARY PARTIES, BY SIMPLY TRYING TO CHANGE THE FACTS .............. 5

CONCLUSION ............................................................................................................................. 8

#4969660v1

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Commonwealth Ins. Co. v. Underwriters, Inc.*,
    846 F.2d 196 (3d Cir. 1988) . [ECF #26] ..................................................................1

*In-Tech Marketing Inc. v. Hasbro, Inc.*,
    685 F. Supp. 436 (D.N.J. 1988) ..........................................................................5, 6

*Sheet Metal Workers International Association Local Union No. 27, AFL-CIO v.
    E.P. Donnelly, Inc.*,
    673 F. Supp.2d 313 (D.N.J. 2009) ......................................................................3, 5

*Waterman v. Mackenzie*,
    138 U.S. 252, 11 S. Ct. 334 (1890) .....................................................................5, 6

**Statutes**

9 U.S.C. §§ 9, 13 ..........................................................................................................3

Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* ............................................................1

**Other Authorities**

5C Fed. Prac. & Proc. Civ. § 1359 (3d ed. 2019) ......................................................7

FRCP 12(b) ..................................................................................................................5

**PRELIMINARY STATEMENT**

Defendants New Vacuum Technologies LLC ("NVT") and North Jersey Petroleum Operations, LLC ("NJPO" and, with NVT, collectively referred to herein as "Defendants") respectfully submit this reply brief in further support of their motion to continue the stay in this case pending completion of the arbitration before the American Arbitration Association ("AAA") in accordance with the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* ("FAA"). In the alternative, should the stay not continue, Defendants seek dismissal of the complaint for failure to join indispensable parties.

This Court's April 20, 2023 Order was clear:

> "there is sufficient overlap between issues raised in this action and the case before the American Arbitration Association (Case No. 01-22-0000-7497) (the Arbitration), which was scheduled to commence on January 16 or 17, 2023. Accordingly, this matter will be temporarily stayed pending a decision in the Arbitration. *See Commonwealth Ins. Co. v. Underwriters, Inc.*, 846 F.2d 196, 199 (3d Cir. 1988) ([T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket....). [ECF #26]

Plaintiff Earle Refining, LLC ("Plaintiff" or "Earle") rather coyly seeks to avoid a further stay of this case until the confirmation or vacatur of said AAA Award is heard, but refuses to state whether it intends to even honor all aspects of the AAA Award. Instead, we are assured that Earle will honor ***only a part*** of the AAA Award—as if that is actually "a thing" one can do. It is bedrock law that an unconfirmed arbitration award is not a final judgment. And it remains basic common sense that if the stay in this case is vacated, and Earle turns around and moves in New Jersey to vacate the AAA Award (as we fully expect it, the losing party, to do), that this Court will have wasted its precious judicial resources on a case that should have been stayed, at a minimum, until the Award is confirmed or vacated.

As concerns Earle's failure to join indispensable parties, and assuming the Court does not agree to continue the stay of this matter, the complaint should be dismissed on ground that Plaintiff

1

has failed to join indispensable parties (PAI-NV, the exclusive licensee, and PRT, a sub-licensee). As with the stay argument, Earle totally side-steps precedents of this Court recognizing that an exclusive licensee of a patent with an extraordinarily broad license (as is the case with PAI-NV) is a necessary party who must be joined in an action. Here, in light of the contents of the Cooperation Agreement cited in Earle's complaint which manifest blatant violations of these two licenses, and the threatened interests of PAI-NV and PRT given Earle's total recalcitrance in the face of the AAA Award rejecting its claim that the license was terminated, and given the risk to Defendants of a multiplicity of suits, PAI-NV and PRT are necessary parties who were required to be joined.  The importance of their joinder is only made more urgent given the boisterous and false statements made in the opposition about the license rights that belong to PAI-NV and PRT which Earle continues to blatantly ignore, despite Judge Parillo's strong rebuke against them in the AAA Award.

#4969660v1

## LEGAL ARGUMENT

### POINT I

### THE COURT SHOULD CONTINUE THE PRIOR STAY OF THIS ACTION AS EARLE'S STANDING AND RELATED OVERLAPPING ISSUES ARE THE SUBJECT OF AN ONGOING ARBITRATION

Earle ignores the obvious fact that, until the AAA Award is confirmed, it is unable to properly plead and show that it has standing to pursue the patent infringement claims it has brought in this action. This Court already determined in its April 20, 2023 Order that there is direct overlap of critical issues between this case and the AAA Arbitration (such as Earle's new claim in the complaint that PAI-NV "has no rights" under the '635 Patent License, which was flatly rejected by the Arbitrator in the AAA Arbitration). And since Earle continues to refuse to state that it will not seek to vacate the AAA Award and has failed to move to confirm that award, the Court should continue the stay of this case until such time as the AAA Final Award is confirmed.

This Court, in *Sheet Metal Workers International Association Local Union No. 27, AFL-CIO v. E.P. Donnelly, Inc.,* 673 F. Supp.2d 313 (D.N.J. 2009) recognized that where an arbitration award is not confirmed, "it lacks the status of a judgment." *Id.* at 320 (citing 9 U.S.C. §§ 9, 13 and citing additional authorities for the proposition that unconfirmed arbitral awards are not entitled to recognition under the full faith and credit statute). In *Sheet Metal Workers*, the Court noted that a party who loses an issue in arbitration (such as Earle's loss on its claim that PAI-NV had been stripped of exclusive license rights, which would have necessarily stripped PRT of sub-license rights) is simply precluded from relitigating that issue in a subsequent proceeding. *Id.*

Here, Earle refuses to concede that the entirety of the AAA Award is binding on it, choosing, instead to coyly state as follows:

- "[O]bviously, Earle Refining will not be challenging ***this part*** of the Final Award that rejected the arguments of Defendants and confirmed Earle Refining's ownership in the '635 Patent." [Earle Opp. Br., at 13 (emphasis added)].

3

- "To the extent Defendants are truly worried that Earle Refining will challenge *this part of the ruling* [that Earle owns the patent], Earle Refining hereby confirms that it will not do so." [*Id.* at 16 (emphasis added)].

Of course, Earle does not deny that it intends to move to vacate the AAA Award, and to seek to vacate the Arbitrator's wholesale rejection of each and every claim for relief that it made. It simply strains credulity for Earle to argue that it could use a targeted challenge to only one small part of the AAA Award given the narrow corridor in which the FAA allows such an award to be attacked.

The planned attack on the AAA Award by Earle will undoubtedly be to the other relevant portions of the AAA Award which deal with the question of who owns the PAI-NV and PRT license rights, which issues are directly at issue in this motion. Earle ignores this aspect of the AAA Award in its opposing brief, simply digging its head in the sand. Earle ignores that Arbitrator Parrillo issued a scathing rebuke of its baseless claims that PAI-NV had been stripped of its exclusive patent license rights in the U.S.; Earle's ridiculous claim (repeated again in its opposition) that PAI-NV breached the license by failing to develop the technology; and that PAI-NV has no ownership rights in PRT. Earle's opposition does not commit Earle to honoring these critical aspects of the AAA Award.

Earle discounts the impact of Defendants having to address the baseless allegation set forth in paragraph 25 of the complaint that PAI-NV was stripped of its license. (Earle Opp. Br., at 17). But if those allegations about the license were so irrelevant, why were those allegations included in the first place? Why was the Cooperation Agreement attached to the Complaint? The reason is clear—Earle knew full well that PAI-NV owns an exclusive license to the technology in the U.S. and was required to be joined in this suit, so it tried to plead around that inconvenient fact.

Earle says "so what" to the prospect of Defendants having to address the baseless allegations it made in the complaint about ownership of these valuable license rights, forgetting that each and every allegation it has made would presumptively entitle Earle *both* to discovery *and* to attempt to prove such allegations. Earle misses the point: allowing it to commence and proceed on a claim that

4

it just lost after a five year litigation that resulted in a favorable arbitration award, would be violative of the rule expressed in *Sheet Metal Workers*, and would unnecessarily complicate this case and waste judicial and party resources. The only fair solution, and the solution that is undoubtedly required by the FAA, is to continue the stay of this case until the AAA Award is confirmed.

**POINT II**

**EARLE TOTALLY SIDE-STEPS THE FACT THAT PAI-NV AND PRT ARE NECESSARY PARTIES, BY SIMPLY TRYING TO CHANGE THE FACTS**

The complaint should be dismissed under FRCP 12(b)(7) and 19 on grounds that PAI-NV and PRT are both indispensable parties that are clearly subject to jurisdiction here and must be joined. In a clever move intended to avoid squarely addressing this problem, Earle twists and distorts the applicable license agreements beyond recognition.

Although Defendants provided an extensive analysis in their moving brief, Earle totally failed to address this Court's decision in *In-Tech Marketing Inc. v. Hasbro, Inc.*, 685 F. Supp. 436 (D.N.J. 1988). Providing a detailed analysis of the case law on this point, the Court summarized the rule set forth in *Waterman v. Mackenzie*, 138 U.S. 252, 11 S. Ct. 334 (1890):

> "The monopoly thus granted is one entire thing, and cannot be divided into parts, except as authorized by [patent law]. The patentee or his assigns may, by instrument in writing, assign, grant and convey, either 1st, the whole patent, comprising the exclusive right to make, use and vend the invention throughout the United States; or, 2nd, an individual part or share of that exclusive right; or 3rd, the exclusive right under the patent within and throughout a specified part of the United States.... Any assignment or transfer, short of one of these, is a mere license, giving the licensee no title in the patent, and no right to sue at law in his own name for an infringement." [(*Id.* at 439)].

Not surprisingly, Earle relies upon section 4.B of the PAI-NV License Agreement stating merely that PAI-NV would join a patent infringement upon the request of the licensor. (*See* Earle Br., at 23 n.6). That clause does not preclude PAI-NV from commencing a patent infringement claim. But Earle ignores the central holding in *In-Tech Marketing* that, where as here, there is "an

exclusive right to make, use and vend, either the entire patent or an undivided portion thereof, or of an exclusive right to make, use and vend within a specific geographical area, the transaction is considered an assignment. This is true despite language in the instrument to the contrary." *Id.* In other words, "[a]n exclusive licensee…has the promise of the patent owner that others shall be excluded from practicing the patent within the field of use for which the license was given." *Id.* at 440. In that circumstance, as was recognized by the Court in *In-Tech* and many of the cases cited therein, failing to require the joinder of the exclusive licensee runs the substantial risk of prejudice, and could subject the existing defendants to a multiplicity of suits and claims.

Worse than this omission by Earle in its opposing brief is the blatantly false statement to the Court on page 20 of its opposing brief that "the rights PAI once had to use this technology were given away to PRT years ago." (Earle Opp. Br., at 20). Earle most assuredly knows that this is a misstatement of fact. The mere juxtaposition of Lieb Exhibits 5 with Lieb Exhibit 6 gives the lie to this clever argument:

| PAI-NV Exclusive License Agreement (Lieb Ex. 5) | PRT Sublicense (Lieb Ex. 6) |
|---|---|
| Defining the "Primary Territory" as being the U.S., United Mexican States, Canada, and the Republic of Colombia" (§ 1(G)).<br><br>Defining the "Secondary Territory" as including "every country in the world, other than for those that are included in the Primary Territory. (*Id.*, § 1(I)). | Second Whereas Clause, recognizing the "retention of rights in certain intellectual property related to the design, manufacture and operation of the Equipment, as well as its use in the treatment or upgrading of petroleum products in refineries in the Field of Use….", by PAI-NV. (Whereas Clause 2, at 1). |
| Section 2.A containing extremely broad grant of license to "make, use, import and sell Licensed Products and to practice Licensed Processes and provided Licensed Services" (*Id.*, § 2.A). | Defining the "Field of Use" as "all petroleum refineries ***located within the [U.S.A.]***" (§ I.3)(emphasis added). |
| Section 2.C granting PAI-NV the exclusive right to grant sublicenses. | "Permitted Purpose" is limited to "the processing of petroleum products at refineries located within the Field of Use." (§ I.8). |
|  | The PRT Sublicense clearly reflects, in Section II.2, that PAI-NV "retains any and all |

6

|  | rights in the intellectual property described herein (including without limitation any that is inherent in the Equipment) ***including all Confidential Information, Inventions, Know How, Patents, and Licensed Technology***." (*Id.*)(emphasis added). |
|---|---|

Obviously, PAI-NV has exclusive rights both in the U.S. and in multiple foreign countries to the use of the Pristec Technology and all associated rights therein. PRT gained no sublicense for anything other than refineries located in the U.S. Moreover, PAI-NV's rights to operate in terminals, and to upstream uses, fall outside the scope of the PRT agreement entirely. Earle cannot seriously be heard to suggest that PRT was sublicensed all of those rights.

Lastly, Earle neglects to address the obvious fact that the Cooperation Agreement affixed to its complaint demonstrates patent infringement both by Earle and by its affiliated company, Earle Oil. As is explored in detail in the Laura Declaration and set forth in the moving brief, Plaintiff and its affiliate, Earle Oil, have engaged in blatant violations of the PAI-NV license (which is governed by New York law),[1] and has operated under the assumption that PAI-NV and PRT no longer have any license rights. ***This is exemplified by the Cooperation Agreement which actually affixes engineering drawings showing that Earle Oil has somehow been given license rights to the Pristec Technology***. As set forth in the moving brief but remains unaddressed by Earle, this directly triggers the exclusive license rights of both PAI-NV and PRT who are entitled to be, and required to be, joined in this action to effectuate complete relief as to all parties.

These are the precise circumstances in which a party must be joined in the action, or the action should be dismissed. *See generally* 5C Fed. Prac. & Proc. Civ. § 1359 (3d ed. 2019). Since Plaintiff failed to join PAI-NV and PRT and deceptively pled this case in an effort to skirt that

---

[1] Laura Decl., Ex. M, at 6 ("This Agreement shall be governed, construed, and enforced in accordance with the laws of the State of New York, [USA].").

7

obligation, the complaint should be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should stay this action pending final confirmation of the AAA Final Award and, should it reach the merits of the Complaint, dismiss this action without prejudice for failure to join indispensable parties.

Dated: June 13, 2023                                PECKAR & ABRAMSON, P.C.

By: */s/ Kevin J. O'Connor*
   KEVIN J. O'CONNOR, ESQ.
   70 Grand Avenue
   River Edge NJ 07661
   201-343-3434
   *Attorneys for Defendants*

8

#4969660v1