NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| EARLE REFINING, LLC,<br><br>Plaintiff,<br><br>v.<br><br>NEW VACUUM TECHNOLOGIES, LLC and NORTH JERSEY PETROLEUM OPERATIONS, LLC,<br><br>Defendants. | Civil Action No. 22-4469 (RK) (DEA)<br><br>**MEMORANDUM OPINION** |

**KIRSCH, District Judge**

  **THIS MATTER** comes before the Court upon a Motion to Stay or in the Alternative to Dismiss, (ECF No. 30), filed by Defendants New Vacuum Technologies, LLC ("NVT") and North Jersey Petroleum Operations, LLC ("NJPO") (collectively, "Defendants"). The Court has considered the parties' submissions and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendants' Motion is **DENIED**.

**I. BACKGROUND**[1]

  The background underpinning this litigation is long and complex. At its core, this action arises from a dispute involving United States Patent No. 10,053,635 (the "'635 Patent"). The technology protected by the '635 Patent is an oil refining technique (the "Pristec Technology")

---

[1] This factual background is taken primarily from the Final Award rendered by Anthony J. Parrillo, P.J.A.D. (ret.), of the American Arbitration Association ("AAA") Commercial Arbitration Tribunal, (ECF No. 30-3, Ex. A ("Final Award")), and is supplemented as needed from Defendants' Brief in support of their Motion to Stay or in the Alternative Dismiss, (ECF No. 30-1 ("MTD")), and Plaintiffs' Memorandum in Opposition, (ECF No. 33 ("Opp.")).

that was developed in 2006 by four inventors: Ruediger Nuerk, Miguel Delgado Castillo, Fedor Chernikov, and Veneciano Rivera. (Final Award at 5.) The Pristec Technology, also known as "cold cracking" technology, was developed to reduce the viscosity, or thickness, of crude oil to make it easier to transport and to separate out impurities, thereby upgrading its quality and value. (*Id.*)

In 2006, Nuerk founded Pristec AG ("PAG")—an Austrian corporation—with the goal of commercializing the Pristec Technology. (*Id.* at 5, 10, 39.) PAG would later officially acquire the rights to the patents for the Pristec Technology, including the '635 Patent at issue in this case, from the four original inventors. (*Id.* at 5, 10.) In 2008, Nuerk met Joseph Laura, who expressed interest in the technology. (*Id.* at 6, 10.) In February 2010, Laura founded Pristec America, Inc. ("PAI"), changing its name to Innovative Crude Technologies ("ICT") that October. (*Id.* at 10.) ICT was owned in equal share by Laura and his partner, Anthony Sichenzio. (*Id.* at 33.) In 2011, Laura and Sichenzio, formed Pristec America, Inc. (New Jersey) ("PAI-NJ"). (*Id.* at 10.) PAI-NJ was owned in equal share by PAG (Nuerk's original Austrian company) and ICT. (*Id.* at 6, 10.) In September 2013, Laura and Sichenzio formed Pristec America, Inc. (Nevada) ("PAI-NV"), which was also owned in equal share by PAG and ICT. (*Id.* at 10.) The goal of the American entities was to raise money from U.S.-based investors to fund further development of the Pristec Technology, with the ultimate goal of commercializing the technology in North America. (*Id.* at 6.)

To that end, on October 13, 2013, PAG granted PAI-NV an exclusive license to use the Pristec Technology in the United States, Mexico, Canada, and Colombia and granted PAI-NV non-exclusive rights elsewhere (the "PAG–PAI-NV License"). (*Id.* at 10.) However, the American entities did not have success commercializing the Pristec Technology. (*Id.*)[2]

---

[2] To make matters worse, Laura and Sichenzio were served with a subpoena from the U.S. Securities and Exchange Commission ("SEC") in July 2015 for allegedly defrauding investors. (Final Award at 7.) The

2

In May 2015, Laura met T.J. Earle, owner of Earle Refining, LLC ("Earle Refining")—the sole Plaintiff in this action. (*Id.* at 7.) Earle expressed an interest in helping commercialize the Pristec Technology. (*Id.* at 8.) In September 2016, Earle "agreed with Laura to invest in the Pristec Technology through the formation of two joint ventures:" Pristec Northeast LLC ("PNE") and Pristec Refining Technologies, LLC ("PRT"). (*Id.* at 8.) The purpose of PNE and PRT was to sell the Pristec Technology to oil terminals and refineries. (*Id.*) Thereafter, PAI-NV granted PRT an exclusive sub-license to use the Pristec Technology in United States refineries (the "PAI-NV–PRT Sub-License"), in furtherance of which PAI-NV "agreed to, among other things, sell equipment and provide certain technical and material support and information to PRT." (*Id.* at 11–12).

However, the relationship between Earle and Laura quickly soured. (*Id.* at 24–25 (describing the "rather sudden deterioration of their business relationship over so short a period of time – approximately late December 2016 to early January 2017 . . .").) On January 19, 2017, Earle Refining advised Laura that PAI-NV was in material breach of the PAI-NV–PRT Sub-License due to, *inter alia*, PAI-NV's alleged failures to deliver equipment to PRT. (*Id.* at 12.) The next day, Earle sent Nuerk (founder and CEO of PAG) a letter—which Earle asked Nuerk to send to Laura on behalf of PAG—demanding that the PAG–PAI-NV License be terminated due to breaches of the license agreement and that PAI-NV "cease and desist" from all activities related to the Pristec Technology. (*Id.* at 12.) PAG sent the "cease and desist" letter on January 21, 2017. (*Id.* at 13.)

The subsequent cascade of litigation between these players began on June 16, 2017 when Earle, along with PRT, Earle Refining, and another entity owned by Earle (Earle Oil Investments

---

SEC ultimately filed a civil complaint against Laura and Sichenzio in the Eastern District of New York alleging that Laura and Sichenzio defrauded investors and misappropriated over $6 million in investor funds. (*Id.* at 17.) Among other allegations, the SEC alleged that Laura and Sichenzio misled investors by claiming PAI owned and had exclusive worldwide rights to profit from the Pristec Technology long before having been granted a license by PAG. (*See* ECF No. 33-2, Exhibit 1 to Lieb Declaration in Support of Opposition to Motion to Stay or in the Alternative Dismiss ("Lieb Decl.").)

LLC ("Earle Oil")), filed a lawsuit against PAG and PAI-NV in the United States District Court for the District of New Jersey, (the "Federal Action"). (*Id.* at 15.) The case was later dismissed for lack of subject matter jurisdiction. (*Id.* at 16.) Next, on August 31, 2017, PAI-NV and Laura commenced an action against, *inter alia*, Earle, Earle Refining, and PRT in the Court of Chancery of the State of Delaware, (the "Delaware Action"). (*Id.*) In March 2018, PAG, purporting to act on behalf of PAI-NV, voluntarily dismissed the Delaware Action. (*Id.* at 17.)

On October 24, 2017, Earle along with PRT, Earle Refining, and Earle Oil, brought another suit against PAG, PAI, and Laura in the Superior Court of New Jersey, Chancery Division, Monmouth County, (the "First Monmouth Action"). (*Id.* at 16.)

On February 26, 2018, PAG and its American affiliates, PAI-NV, PAI-NJ, and ICT, filed suit against Laura and Sichenzio in a separate Monmouth County Chancery Division action, claiming, *inter alia*, that PAG had the legal right to terminate the PAG–PAI-NV License due to alleged misconduct on the part of Laura and Sichenzio. (*Id.* at 17; *see also* MTD at 5.) The Chancery Division compelled arbitration, which was held before the International Centre for Dispute Resolution ("ICDR"). (Final Award at 17.) On June 10, 2019, the ICDR Arbitrator issued a Final Award in favor of Laura and Sichenzio, including a permanent injunction prohibiting PAG from directly or indirectly impeding the PAG–PAI-NV License. (*Id.* at 20, 68, 75.)

On July 3, 2019, Earle Refining purchased the '635 Patent from PAG: the parties executed a Patent Purchase Agreement wherein Earle Refining purchased the patent for $500,000. (*Id.* at 20, 73.) Also in that agreement, PAG assigned to Earle Refining its rights and obligations as the licensor with respect to the PAG–PAI-NV License in the United States. (*Id.* at 20.)

On July 31, 2019, Earle Refining, along with PRT, Earle Oil, and another Earle entity (Earle Investments, LLC ("Earle Investments")), filed a second action in the Superior Court of

New Jersey, Chancery Division, Monmouth County against PAI-NV, PAI-NJ, ICT, Laura, and Sichenzio, (the "Second Monmouth Action"). (*Id.* at 21.) In October 2019, Sichenzio, Laura, PAI-NJ, PAI-NV, and ICT filed a counterclaim, in which they asked the Court to void the Patent Purchase Agreement, alleging that PAG's sale of the '635 Patent to Earle Refining was illegal and improper because it, *inter alia*, violated the ICDR's permanent injunction prohibiting PAG from directly or indirectly impeding the PAG–PAI-NV License. (*Id.* at 73; *see also* MTD at 10.) On June 30, 2020, the parties executed an Arbitration Agreement wherein they agreed to arbitrate all disputes in the First and Second Monmouth Actions before the American Arbitration Association ("AAA") (the "AAA Arbitration"), including whether sale of the '635 Patent to Earle Refining was valid and whether the PAG–PAI-NV License had been terminated.[3] (*Id.* at 4, MTD at 12.)

Before completion of the AAA Arbitration, on July 7, 2022, Earle Refining filed the instant suit against Defendants NVT and NJPO. Earle Refining alleges that Defendants NVT and NJPO developed an oil refining technology that infringes on the '635 Patent. (*See generally* ECF No. 1 ("Compl.").) Earle Refining also alleges that Laura, along with Chernikov and Delgado Castillo (two of the other original inventors and former employees of PAG), "were involved with the [i]nfringing [p]rocesses of both Defendants." (*Id.* ¶¶ 23, 25.) According to Earle Refining, NVT is installing and testing this infringing Magnetic Vacuum Upgrading ("MVU") technology at its prototype plant in New Jersey, has filed United States Patent Application No. 16/793,273, which was published as US20200325402A1, (the "'402 Publication"), and will employ the MVU

---

[3] In 2021, PAG's creditors commenced insolvency proceedings in Austria Commercial Court in Vienna, Austria. During the proceedings, all of PAG's assets, including its intellectual property, were auctioned off to RedMax GmbH & Co KG ("RedMax"), another Austrian corporation. (Final Award at 22.) Following the insolvency proceedings, RedMax and Earle Refining entered into an agreement whereby RedMax waived its right to challenge PAG's sale of the '635 Patent to Earle Refining and confirmed Earle Refining has "the exclusive rights in the technology in the US and RedMax shall have exclusive rights worldwide (except in the US) . . . ." (*Id.*) RedMax also agreed that Earle Refining owned the '635 Patent and assigned all rights or claims it may have had in the patent to Earle Refining. (*Id.*)

technology at NJPO's oil treatment facility in New Jersey. (Compl. ¶¶ 6, 19–20.) Earle Refining alleges that the '402 Publication discloses a process that would infringe multiple claims of the '635 Patent. (*Id.* ¶ 22.)

Defendants moved to dismiss or in the alternative stay this action pending completion of the AAA Arbitration. (ECF No. 10.) On April 20, 2023, the Court "temporarily stayed [this litigation] pending a decision in the Arbitration," finding "sufficient overlap between issues raised in this action and the case before the AAA." (ECF No. 26.) The next day, on April 21, 2023, the AAA Arbitrator issued the Final Award. As relevant to this litigation, the arbitrator found that the PAG–PAI-NV License had not been terminated by PAG. (Final Award at 69 ("PAI remains . . . the licensee of the U.S. Patent for the Pristec Technology pursuant to the October 1, 2013 License Agreement between PAI-NV and PAG . . . PAI-NV continues to hold a license for the Pristec Technology.").) The arbitrator also found that the Patent Purchase Agreement was valid and that Earle Refining was the owner of the '635 Patent. (*Id.* at 76 ("[T]he Patent Sale . . . neither interfered with nor terminated PAI-NV's license rights, which remained in full force and effect in its aftermath. Consequently, the Patent Sale is not in violation of the ICDR injunction.").)

Following the AAA Final Award, Defendants filed the present Motion to Dismiss or in the Alternative Stay, which is now pending before the Court. Defendants argue that this case should be dismissed for failure to join indispensable parties. (MTD at 20.) They contend that PAI-NV and PRT, as licensee and sub-licensee respectively of the Pristec Technology and thus the '635 Patent, are critical players that have an interest in the outcome of this litigation, especially because Earle Refining's Complaint alleges that their license and sub-license rights had been terminated. (*Id.* at 4, 20.) According to Defendants, Earle Refining's failure to join PAI-NV and PRT warrants dismissal of this suit. (*Id.* at 23.) Alternatively, Defendants ask that the Court continue the stay of

this case pending confirmation of the AAA Final Award. (*Id.* at 16.) Defendants anticipate that Earle Refining will challenge the Final Award, which would upend this litigation. (*Id.* at 16–17.) The Court now turns to Defendants' Motion.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 19 governs the circumstances in which the joinder of an absent party is compulsory. Fed. R. Civ. P. 19. Under Rule 12(b)(7), a court may dismiss an action for "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7). Dismissal under Rule 12(b)(7) is warranted when the absent party is both necessary under Rule 19(a) and indispensable under Rule 19(b). *Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 312 (3d Cir. 2007). "[I]n pursuing a Rule 12(b)(7) motion to dismiss, the moving party bears the burden of showing that the absent party is both necessary and indispensable . . . ." *US Tech Sols., Inc. v. eTeam, Inc.*, No. 17-1107, 2017 WL 3535022, at *2 (D.N.J. Aug. 16, 2017) (citing *Disabled in Action of Pennsylvania v. Se. Pennsylvania Transp. Auth.*, 635 F.3d 87, 97 (3d Cir. 2011)). In considering a motion brought pursuant to Rule 12(b)(7), a court must accept the factual allegations in a complaint as true and view them in the light most favorable to the non-moving party. *Id.* However, "when making a determination pursuant to Federal Rule of Civil Procedure 19, a court may consider evidence outside of the pleadings." *M&B IP Analysts, LLC v. Cortica-US, Inc.*, No. 19-0429, 2020 WL 3411027, at *2 (D.N.J. June 22, 2020) (citing *Mediterranean Shipping Co. (USA) Inc. v. Shandex Corp.*, No. CV 16-2595, 2017 WL 1129593, at *2 (D.N.J. Mar. 23, 2017)).

## III.    DISCUSSION

Here, Defendants filed a Rule 12(b)(7) motion to dismiss this case. Defendants also ask that the temporary stay imposed by the Court on April 20, 2023 be continued until the AAA Final Award is officially confirmed. The Court will begin with whether dismissal of this case is

warranted under Rule 19 as dismissal would moot Defendants' alternative request to continue the Court's stay of this matter.

    A.    **FAILURE TO JOIN INDISPENSABLE PARTIES**

Defendants argue that this case must be dismissed under Rule 19 because, as exclusive licensees and sub-licensees of the '635 Patent, PAI-NV and PRT play a central role in this dispute. (MTD at 20.) As noted above, Rule 19 governs compulsory joinder. It provides for a two-step analysis. In the first step, a court "must determine whether the absent [party] should be joined as [a] 'necessary' part[y] under Rule 19(a)." *Gen. Refractories*, 500 F.3d at 312. Under subsection (a):

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a).

"[J]oinder of parties is compulsory or 'necessary' if their joinder is 'feasible.'" *Gen. Refractories*, 500 F.3d at 312. Joinder is feasible when it would not divest the Court of subject-matter jurisdiction "inasmuch as it would [not] defeat diversity of citizenship." *Id.* If a party *can* be feasibly joined, dismissal is not warranted, and the court need not proceed to the second step of

8

the analysis. *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 402 (3d Cir. 1993); *see also Hotaling & Co., LLC v. LY Berditchev Corp.*, No. 20-16366, 2021 WL 3783260, at *6 (D.N.J. Aug. 26, 2021) ("The Court only decides whether 'the action should proceed among the existing parties or should be dismissed' under Rule 12(b)(7) *after* determining that a required party's "joinder is not feasible[.]" (quoting *Gen. Refractories*, 500 F.3d at 312)).

However, if a party is otherwise necessary, but joinder is *not feasible*, the court must determine whether the absent party is "indispensable" under Rule 19(b). *Gen. Refractories*, 500 F.3d at 319. To determine whether a party is indispensable under subsection (b), a court must consider the following factors:

> first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed. R. Civ. P. 19(b). If the party is indispensable under subsection (b), "the action cannot go forward." *Gen. Refractories*, 500 F.3d at 312. "Put another way, a finding of indispensability under Rule 19(b) necessitates dismissal for lack of subject matter jurisdiction." *Id.* at 319; *see also Sun Chem. Corp. v. Am. Home Assurance Co.*, No. 20-6252, 2020 WL 5406171, at *5 (D.N.J. Sept. 9, 2020) ("If the non-joined party is both necessary and indispensable to the action, the entire action must be dismissed.")

Turning to Defendants' arguments, Defendants contend that the Complaint "should be dismissed under [Rules] 12(b)(7) and 19 on grounds that PAI-NV and PRT are both indispensable parties that are clearly subject to jurisdiction here and must be joined." (MTD at 20.) Defendants' argument misses the mark. Dismissal under Rule 19 is only warranted when joinder is *not*

9

feasible—*i.e.* when joinder would deprive the court of subject-matter jurisdiction. Here, Defendants concede, and expressly *argue* in their Motion, that PAI-NV and PRT are "clearly" subject to this Court's jurisdiction. (MTD at 20.) They reiterate this argument in their Reply brief in support of their Motion. (ECF No. 24 at 5 ("Reply").)

Indeed, the Court finds that joining PAI-NV and PRT in this action would not deprive the Court of subject matter jurisdiction. This case arises under federal patent law at 35 U.S.C. §§ 100 *et seq*. Thus, the basis for the Court's jurisdiction is federal question jurisdiction under 28 U.S.C. § 1331 as well as the Court's original jurisdiction under 28 U.S.C. § 1338 "of any civil action arising under any Act of Congress relating to patents . . . ." As a result, the parties' citizenship is inapposite, and joinder of PAI-NV and PRT would have no effect on the Court's jurisdiction over this matter.

Defendants have failed to meet their burden of demonstrating that PAI-NV and PRT cannot feasibly be joined in this action. *See Disabled in Action of Pennsylvania*, 635 F.3d at 97. Therefore, the Court need not proceed any further: it need not decide whether PAI-NV or PRT are indispensable under Rule 19(b), warranting dismissal of this case. *See Hotaling*, 2021 WL 3783260, at *6 ("Here, Defendant does not show why [non-party] cannot be joined in this matter, so its motion [to dismiss] is denied."). Accordingly, Defendants' Motion to Dismiss under 12(b)(7) is **DENIED**.[4]

    **B.**    **CONTINUED STAY OF THIS CASE**

Having determined that dismissal under Rule 12(b)(7) is not warranted, the Court next turns to Defendants' argument that the Court continue the stay of this action pending confirmation

---

[4] To the extent that Defendants seek to join PAI-NV and PRT, Defendants should file an appropriate motion for joinder under Rule 19(a), at which time the Court will revisit the argument that PAI-NV and PRT are "necessary" parties to this litigation.

of the AAA Final Award. As the Court noted above, a Final Award was entered on April 21, 2023. Defendants contend that "[i]t can be expected, given the prior gamesmanship by Plaintiff that has played out over the past six years, that it will turn around and challenge aspects of the Final Award while seeking to keep some aspects intact." (MTD at 16.) According to Defendants, the "only fair solution" is to continue the stay of this case until the Final Award is confirmed, and that "[t]o allow a contrary result would be to subject Defendants to the time and expense of litigation that may in fact be entirely avoided if the Final Award ends up being challenged by Earle and upended." (*Id.* at 16–17.) The Court finds that Defendants' request is now moot.

Under the Federal Arbitration Act ("FAA"), a party may seek to vacate, modify, or correct an arbitration award within three months after the award is issued. *See* 9 U.S.C. § 12.[5] When the parties do not seek to challenge the award, they may move to confirm same within one year after it is issued. 9 U.S.C. § 9; *see also Lex v. Weinar*, No. 13-96, 2015 WL 1455810, at *3 (E.D. Pa. Mar. 31, 2015) (explaining that the FAA sets a three-month deadline for challenging an award and a one-year deadline for confirming an award). "A court must confirm an arbitration award unless it is vacated, modified, or corrected." *PG Publ'g, Inc. v. Newspaper Guild of Pittsburgh*, 19 F.4th 308, 313 (3d Cir. 2021) (emphasis added) (quoting *Hall St. Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 582 (2008). While the Court has received no information from the parties as to the status of the AAA Final Award, the Court takes judicial notice of the fact that, in the Second Monmouth

---

[5] The basis for challenging an arbitration award is "extremely narrow." *Dealer Computer Servs., Inc. v. Dayton Ford Inc.*, No. 8-3508, 2009 WL 971408, at *4 (D.N.J. Apr. 9, 2009). An arbitration award may only be vacated (1) when the award was "procured by corruption, fraud, or undue means"; (2) where there was there was "evident partiality or corruption in the arbitrators"; (3) where the arbitrators were guilty of certain "misconduct" or "misbehavior"; or (4) where the arbitrators "exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10. An award may only be modified or corrected when: (a) "there was an evidence material miscalculation of figured or an evidence material mistake in the description of any person, thing, or property referred to in the award"; (b) the arbitrator "awarded upon a matter not submitted to them"; or (c) the award is "imperfect in matter of form not affecting the merits of the controversy." *Id.*

11

Action, Earle Refining, PRT, Earle Oil, and Earle Investments moved to confirm the Final Award.[6] PAI-NV, PAI-NJ, ICT, Laura, and Sichenzio joined in the motion, and on September 13, 2023, the Chancery Division granted the motion and confirmed the Final Award, entering judgment in the Second Monmouth Action. *See Pristec Refining Technologies, et al v. Pristec AG, et al.*, Mon-C-98-19 (N.J. Super. Ct. Sept. 13, 2013). Accordingly, Defendants' request to continue the stay of this case is **DENIED** as moot.

---

[6] A court may take judicial notice of another court's docket. *See Orabi v. Att'y Gen. of the U.S.*, 738 F.3d 535, 537 (3d Cir. 2014); *see also Korotki v. Levenson*, No. 20-11050, 2021 WL 2650775, at *3 (D.N.J. June 28, 2021) (collecting cases).

## **CONCLUSION**

For the reasons set forth above, Defendants' Motion to Dismiss or in the Alternative Stay (ECF No. 30) is **DENIED**. An appropriate Order accompanies this Memorandum Opinion.

_____
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

<u>Dated</u>: May 29th, 2024